#27981, #27982, #27986, #28008-aff in pt, rev in pt & rem in pt-DG
**2017 S.D. 50**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

(#27981)

STATE OF SOUTH DAKOTA,
DEPARTMENT OF GAME,
FISH AND PARKS,                                           Appellant,

     v.

TROY TOWNSHIP, DAY COUNTY,
SOUTH DAKOTA,                                             Appellee.

--------------------------------------------------------------------------------------------------------------

(#27982)

STATE OF SOUTH DAKOTA,
DEPARTMENT OF GAME,
FISH AND PARKS,                                           Appellant,

     v.

TROY TOWNSHIP, DAY COUNTY,
SOUTH DAKOTA,                                             Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
DAY COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JON S. FLEMMER
Judge

* * * *

ARGUED ON APRIL 25, 2017
OPINION FILED **08/16/17**

--------------------------------------------------------------------------------

(#27986)

STATE OF SOUTH DAKOTA,
DEPARTMENT OF GAME,
FISH AND PARKS,                                                Appellant,

        v.

VALLEY TOWNSHIP, DAY COUNTY,
SOUTH DAKOTA,                                                  Appellee.

--------------------------------------------------------------------------------

(#28008)

STATE OF SOUTH DAKOTA,
DEPARTMENT OF GAME,
FISH AND PARKS,                                                Appellant,

        v.

BUTLER TOWNSHIP, DAY COUNTY,
SOUTH DAKOTA,                                                  Appellee.

* * * *

RICHARD J. NEILL
Special Assistant Attorney General
Pierre, South Dakota

and

PAUL E. BACHAND
Special Assistant Attorney General
Pierre, South Dakota                          Attorneys for appellant.


JACK H. HIEB
ZACHARY E. PETERSON of
Richardson, Wyly, Wise
  Sauck & Hieb, LLP
Aberdeen, South Dakota                        Attorneys for appellees.

#27981, #27982, #27986, #28008

GILBERTSON, Chief Justice

[¶1.] Troy, Valley, and Butler Townships' respective boards of supervisors vacated portions of several section-line highways in Day County. South Dakota's Department of Game, Fish, and Parks appealed these administrative actions to the circuit court, asserting the highways provided access to bodies of water held in trust by the State for the public. The circuit court affirmed in part and reversed in part, and the Department now appeals to this Court. The Department argues that: (1) by vacating the highways, the Townships denied public access to a public resource, (2) the highway vacations were not in the public interest, (3) the Townships' decisions were based on improper motives, (4) the Townships denied the Department due process, and (5) the circuit court incorrectly imposed the burden of proof on the Department. We affirm the circuit court's decision in regard to Valley and Butler Townships. We reverse and remand in regard to Troy Township.

**Facts and Procedural History**

[¶2.] "In 1871, the Dakota Territory Legislature passed an act [that] accepted Congress's dedication of all section lines as highways." *Douville v. Christensen*, 2002 S.D. 33, ¶ 11, 641 N.W.2d 651, 654 (citing Act of Jan. 12, 1871, 1870-71 Dakota Sess. Laws ch. 33). This provision carried forward into South Dakota's codified laws. *Id.* "There is along every section line in this state a public highway located by operation of law, except where some portion of the highway along such section line has been heretofore vacated or relocated by the lawful action of some authorized public officer, board, or tribunal." SDCL 31-18-1. One such board is a township board of supervisors. SDCL 31-3-6.

[¶3.]        This appeal involves the decisions of three townships in Day County: Troy, Valley, and Butler.[1]  The Townships' respective boards of supervisors each approved petitions to vacate highway segments within their jurisdictions.  As we recently explained in *Duerre v. Hepler*, 2017 S.D. 8, 892 N.W.2d 209, a number of nonmeandered bodies of water have accumulated on privately owned land in Day County.  While some of the highway segments vacated by the Townships could be used to access these waters, the circuit court found that overall, the vacations did not materially alter access to the nonmeandered bodies of water.

[¶4.]        Troy Township approved two petitions to vacate a total of 22 highway segments within its jurisdiction.  The first was submitted on May 13, 2014; the second, July 9.  The segments do not aid in traversing the Township; in fact, most of the segments are submerged, in disrepair, or unimproved.  While some could provide public access to nonmeandered bodies of water, the highways at issue primarily provide access to land adjoining the highways, and other highways that provide access to those bodies of water remain open.

[¶5.]        The petitions were prepared by the Township's clerk and given to a Township resident for circulation.  Each petition was signed by six Township voters and verified by all three members of the Troy Township Board of Supervisors: Chairman Thad Duerre and Supervisors Larry Herr and Daniel Grode.  The Township scheduled a public hearing for May 27 to consider the first petition and

---

1.     In this opinion, we refer to Troy, Valley, and Butler Townships collectively as "Townships."  The singular form "Township" is used to refer to Troy, Valley, and Butler Townships individually when such use unambiguously indicates the specific township referred to.

published notice of the hearing on May 19 and 26. The Department contacted the Township on May 19 and objected to several of the proposed vacations, claiming that those highways led to the Lily Game Production Area (GPA). At the May 27 hearing, the Township decided to table the petition for approximately 30 days. The Township published notice on June 16 and 23 for the subsequent hearing scheduled for June 26. At the second hearing, which the Department did not attend, the Township voted to vacate 12 highway segments out of the 15 proposed in the petition.

[¶6.] The Township scheduled a public hearing for July 22 to consider the second petition and published notice of the hearing on July 14 and 21. On July 15, the Department contacted the Township regarding the second petition and objected to several of the proposed vacations. According to the Department, the highways at issue also led to the Lily GPA as well as to two U.S. Fish and Wildlife Service waterfowl production areas. A representative of the Department attended the July 22 hearing. The Township voted to vacate eight additional highway segments.

[¶7.] Valley Township approved one petition, which was submitted on July 21, 2014, to vacate ten highway segments within its jurisdiction. The Township scheduled a public hearing for August 5 to consider the petition and published notice on July 28 and August 4. The Department did not contact the Township regarding the petition, and the Township did not receive any objections to the petition. Neither the petitioners nor the Department attended the hearing. Valley Township approved all ten vacations proposed in the petition.

[¶8.] Butler Township approved one petition, which was submitted on July 29, 2014, to vacate 13 highway segments within its jurisdiction. The Township scheduled a public hearing for August 11 and published notice of the hearing on August 4 and 11.[2] The Department sent a letter to the Township on August 6, objecting to the entire petition. The Township also received a written objection from several local residents, who asked the Township to leave open highway segments they used to access their properties. The Township agreed and removed two proposed vacations from consideration. At the August 11 hearing, the Butler Township Board of Supervisors approved 10 of the 13 vacations proposed in the petition.

[¶9.] The Department appealed the Townships' resolutions to the circuit court, arguing that vacating the highway segments did not better serve the public interest and that the Townships' conclusions otherwise were arbitrary. The Department also claimed the Townships violated its right to due process in a number of ways. The court granted summary judgment in favor of the Department on two of Troy Township's vacations because they involved a shared highway with a neighboring township that had not passed a corresponding resolution vacating the same highway segments. The court then conducted a de novo hearing on the Townships' actions and affirmed the remaining vacations.

[¶10.] The Department appeals, raising five issues:

> 1. Whether the Department had the burden of proof in its appeal before the circuit court.

---

2. Butler Township asserts the paper in which notice was published was delivered to rural addresses on August 9.

2.   Whether vacating the highways will better serve the public interest.

3.   Whether vacating the highways denied public access to a public resource.

4.   Whether the Townships' decisions to vacate segments of the section-line highways were arbitrary.

5.   Whether the Townships denied the Department due process.

### Analysis and Decision

[¶11.]   ***1.   Whether the Department had the burden of proof in its appeal before the circuit court.***

[¶12.]   The Department first argues that in its appeal to the circuit court, the court incorrectly imposed the burden of proof on the Department.  SDCL 8-5-8 permits an appeal to a circuit court "[f]rom all decisions, orders, and resolutions of the boards of supervisors of townships . . . by any person aggrieved thereby[.]"  Under SDCL 8-5-10, such an appeal "shall be heard and determined de novo."  The term *hearing de novo* means "[a] new hearing of a matter, conducted as if the original hearing had not taken place."  *Hearing*, *Black's Law Dictionary* (10th ed. 2014).  Because a township may vacate a highway only after it affirmatively determines that doing so will better serve the public interest, SDCL 31-3-6, the Department reasons that the Townships would have had the burden of proving the same before the circuit court.

[¶13.]   The Department's reasoning assumes that the Department had a right to appeal and that the applicable standard of review on appeal was de novo.[3]  But

---

3.   The Department offers no analysis on SDCL 8-5-8's aggrieved-person requirement.  However, neither do the Townships dispute the Department's

(continued . . .)

answering these questions is not as simple as noting that SDCL 8-5-10 prescribes de novo review. This Court, like its predecessor, has long recognized that the separation-of-powers doctrine precludes de novo review of administrative action that is not quasi-judicial. One line of cases involving administrative appeals preserves the separation of powers by restricting the right to appeal to quasi-judicial acts only. Another line recognizes a right to appeal non-quasi-judicial acts but employs only limited review on appeal. Since the 1970s, however, some of this Court's decisions have blurred the distinction between quasi-judicial and non-quasi-judicial acts. Today we reassert the separation-of-powers doctrine. As explained more fully below, we hold that de novo review is not constitutionally permissible in this case and that the Department has the burden of proof.

[¶14.]     It is axiomatic that statutory authorization cannot override constitutional limitations on judicial power. Under the separation-of-powers doctrine, a court may not "exercise or participate in the exercise of functions which are essentially legislative or administrative." *Fed. Radio Comm'n v. Gen. Elec. Co.*, 281 U.S. 464, 469, 50 S. Ct. 389, 390, 74 L. Ed. 969 (1930); *see also Dunker v. Brown Cty. Bd. of Educ.*, 80 S.D. 193, 203, 121 N.W.2d 10, 16-17 (1963); *Codington Cty. v. Bd. of Comm'rs*, 51 S.D. 131, 135-36, 212 N.W. 626, 627-28 (1927); *Pierre Water-Works Co. v. Hughes Cty.*, 5 Dakota 145, 163-64, 37 N.W. 733, 740 (1888). Therefore, "executive or administrative duties of a nonjudicial nature may not be

---

(. . . continued)

      asserted right to appeal. For purposes of this opinion, we assume without deciding that the Department is an aggrieved person within the meaning of SDCL 8-5-8.

imposed on judges[,]" *Buckley v. Valeo*, 424 U.S. 1, 123, 96 S. Ct. 612, 684, 46 L. Ed. 2d 659 (1976) (per curiam), "either directly or by appeal[,]" *Keller v. Potomac Elec. Power Co.*, 261 U.S. 428, 444, 43 S. Ct. 445, 449, 67 L. Ed. 731 (1923). "The purpose of this limitation is to help ensure the independence of the Judicial Branch and to prevent the Judiciary from encroaching into areas reserved for the other branches." *Morrison v. Olson*, 487 U.S. 654, 677-78, 108 S. Ct. 2597, 2612, 101 L. Ed. 2d 569 (1988).

[¶15.]     Both this Court and its predecessor have applied the separation-of-powers doctrine in determining the level of judicial review permitted in an appeal of administrative action. The Supreme Court of Dakota Territory first addressed the issue in *Pierre Water-Works Co. v. Hughes County*, 5 Dakota 145, 37 N.W. 733 (1888). In that case, the Hughes County Board of Commissioners increased the tax assessment of Pierre Water-Works' property, and Pierre Water-Works appealed. *Id.* at 150-51, 37 N.W. at 733. Chapter 21, § 46, of Dakota Territory's Political Code permitted an appeal by any person aggrieved by a "decision" of the board, and § 49 prescribed a de novo hearing on appeal. *Pierre Water-Works*, 5 Dakota at 162, 37 N.W. at 739.[4] Recognizing that "the great powers of the government—the legislative, executive, and judicial—[must] be separately exercised by the departments in which such power is expressly lodged," the court noted:

> The powers given to the board of county commissioners . . . are very comprehensive; and include, not only those of an administrative and executive character, but those of a legislative and *quasi* judicial character as well. And it may well be questioned whether the legislature, in giving an appeal from the

---

4.     These territorial code provisions survive as SDCL 7-8-27 and -30.

> decisions of the board, intended to make the court a board of county commissioners, and on appeal to require it *de novo* to hear and determine matters of a political and administrative character, which appeal directly to the judgment and discretion of the commissioners. Such is not the province of courts. . . . "Hence we . . . suppose that appeals from the board of county commissioners to the district court must be limited to such cases as require the exercise of purely judicial power, and therefore that, when the board of county commissioners exercises political power or legislative power or administrative power or discretionary power or purely ministerial power, no appeal will lie."

*Id.* at 163-65, 37 N.W. at 739-40 (quoting *Fulkerson v. Stevens*, 1 P. 261, 263 (Kan. 1883)). The court concluded that the issue was quasi-judicial and that the appeal was therefore constitutionally permissible. *Id.* at 166-67, 37 N.W. at 741; *see also Champion v. Bd. of Cty. Comm'rs*, 5 Dakota 416, 429-30, 41 N.W. 739, 742 (1889).

[¶16.] This Court adopted the same reasoning in *Codington County v. Board of Commissioners*, 51 S.D. 131, 212 N.W. 626 (1927). In that case, Codington County attempted to appeal its board of commissioners' selection of a particular architect to design and build a courthouse. *Id.* at 132, 212 N.W. at 626. As in *Pierre Water-Works Co.*, we said:

> If the action appealed from is quasi judicial, then the court on appeal can do what it finds the board should have done, but, if the action appealed from is not quasi judicial, then the court, upon appeal, cannot substitute its judgment for that of the board. If the Legislature had expressly provided that upon appeal in this proceeding the court might have determined the architect to be selected, such a provision by the Legislature would have invaded the constitutional division of the departments of government.

*Codington Cty.*, 51 S.D. at 135-36, 212 N.W. at 627-28. We determined that "[t]he selection of an architect to plan and supervise the construction of a public building is not the exercise of quasi judicial power[.]" *Id.* at 134, 212 N.W. at 627. Thus,

applying the separation-of-powers doctrine, we held there was no right to appeal because de novo review of non-quasi-judicial administrative action was not constitutionally permissible.

[¶17.]    We took a different approach to maintaining the separation of powers in *Dunker v. Brown County Board of Education*, 80 S.D. 193, 121 N.W.2d 10 (1963). In *Dunker*, Brown County's board of education approved a proposed school district, and several individuals appealed to the circuit court, seeking de novo review under the predecessor to SDCL chapter 13-46. *Dunker*, 80 S.D. at 196, 203, 121 N.W.2d at 12-13, 17.[5] Applying the separation-of-powers analysis of the county-commission cases, we addressed the nature of the school board's action. We held that because "[t]he creation, enlargement, consolidation[,] or dissolution of school districts is a *legislative* function[,]"—rather than a quasi-judicial function—interference by a court "would be a violation of the separation of powers provision of [Article] II of our State Constitution." *Id.* at 203, 121 N.W.2d at 16 (emphasis added) (citing *Champion*, 5 Dakota 416, 41 N.W. 739). Because this "constitutional separation of powers cannot be done away with by legislative action[,]" we concluded that statutes prescribing de novo review of administrative action "must be applied in the light of this constitutional limitation." *Id.* at 203-04, 121 N.W.2d at 17. Unlike *Codington County*, however, we did not simply hold there was no right to appeal. Instead, we held that when the administrative action at issue is not quasi-judicial, appellate review is limited to determining whether the administrative board "has

---

5.    SDCL 13-46-1 permits an appeal "[f]rom a decision made by any school board[.]" SDCL 13-46-6 requires "[t]he trial in the circuit court shall be de novo[.]"

acted unreasonably, arbitrarily, or has manifestly abused its discretion[.]" *Dunker*, 80 S.D. at 203, 121 N.W.2d at 17.[6]

[¶18.]     Subsequently, some opinions departed from *Dunker* and *Codington County's* understanding of the separation-of-powers doctrine. *Mortweet v. Ethan Board of Education*, 90 S.D. 368, 241 N.W.2d 580 (1976), explicitly rejected the notion that there is any material distinction between quasi-judicial and non-quasi-judicial administrative action. In that case, an administrative board decided not to renew Mortweet's teaching contract. *Id.* at 369, 241 N.W.2d at 580. She appealed, arguing that the board's action was quasi-judicial, that she was entitled to a de novo hearing under SDCL 13-46-6, and that the board therefore had the burden of proof in justifying its failure to renew her contract. *Mortweet*, 90 S.D. at 371, 241 N.W.2d at 581. The Court rejected Mortweet's arguments. In the Court's view, the separation-of-powers doctrine precluded a de novo hearing on appeal whenever "an administrative board . . . is legitimately exercising administrative power." *Id.* at 372-73, 241 N.W.2d at 582. The Court was "unpersuaded" that a de novo hearing was ever appropriate—even if the action appealed is quasi-judicial. *See id.*

[¶19.]     Other appeals involving different administrative boards have also presented similar analytical problems. In some cases, we have held that when a circuit court hears an appeal regarding administrative action, "[t]he powers of the

---

6.     If the Court had strictly applied the *Codington County* line of authority, *Dunker* could have simply been dismissed on the basis that there was no right to appeal. The *Dunker* opinion does not reveal the reason for adopting this alternative approach. Regardless, *Dunker* and *Codington County* equally preserve the separation of powers by preventing de novo review of non-quasi-judicial administrative action.

circuit court are the same as those of the [administrative] board. The court exercises independent judgment . . . . In effect, it sits as another board . . . ." *Chi. & Nw. Ry. Co. v. Schmidt*, 85 S.D. 223, 227, 180 N.W.2d 233, 235 (1970). Seemingly to the contrary, we have also said that in such an appeal, the circuit court should *not* sit as a one-person administrative board. *In re Conditional Use Permit Denied to Meier*, 2000 S.D. 80, ¶ 22, 613 N.W.2d 523, 530. And the standard of review stated in *Goos RV Center v. Minnehaha County Commission*, 2009 S.D. 24, 764 N.W.2d 704, is internally inconsistent. In stating the standard of review, the Court first said that a de novo hearing means "the [circuit] court should determine the issues before it on appeal *as if they had been brought originally*. The court must review the evidence, make findings of fact and conclusions of law, and render judgment *independent of the agency proceedings*." *Id.* ¶ 8, 764 N.W.2d at 707 (emphasis added) (quoting *Conditional Use Permit Denied to Meier*, 2000 S.D. 80, ¶ 21, 613 N.W.2d at 530). However, the paragraph then concludes by stating the circuit court may reverse only if the administrative board's decision is arbitrary. *Id.* These two statements cannot be reconciled.

[¶20.]     The foregoing illustrates the difficulty in interpreting statutes that mandate de novo review even when such review is not permissible. Resolving this problem, as well as the present case, requires a rejection of cases that fail to distinguish between quasi-judicial and non-quasi-judicial administrative action. The authorities cited above establish that under the separation-of-powers doctrine, the judicial branch may not wield legislative or executive power. *Supra* ¶ 14. Therefore, regardless of statutory authorization to the contrary, a court may not

substitute its judgment for that of an administrative board on issues that are not quasi-judicial. *See Morrison*, 487 U.S. at 677-78, 108 S. Ct. at 2612.[7] However, neither should a court abdicate its judicial power to the legislative or executive branches of government, *see id.*; if the action appealed is quasi-judicial, then the separation-of-powers doctrine is not offended by a de novo hearing on appeal, and statutes prescribing such review must be followed. *Dunker*, 80 S.D. at 203-04, 121 N.W.2d at 17.

[¶21.]        The question in this case, then, is whether the action appealed is quasi-judicial. Administrative action is quasi-judicial if it "investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist" rather than "look[ing] to the future and chang[ing] existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power." *Prentis v. Atl. Coast Line Co.*, 211 U.S. 210, 226, 29 S. Ct. 67, 69, 53 L. Ed 150 (1908); *accord In re Conditional Use Permit No. 13-08*, 2014 S.D. 75, ¶ 19, 855 N.W.2d 836, 842; *see also Champion*, 5 Dakota at 430,

---

7.      The courts of a number of other states employ the same reasoning in limiting their states' statutes prescribing de novo hearings for appeals of administrative action. *See Ball v. Jones*, 132 So. 2d 120, 123-24 (Ala. 1961); *Tomerlin v. Nickolich*, 27 S.W.3d 746, 749-50 (Ark. 2000); *Bixby v. Pierno*, 481 P.2d 242, 251 (Cal. 1971) (en banc); *Walgreen Co. v. Charnes*, 819 P.2d 1039, 1047 (Colo. 1991) (en banc); *Bentley v. Chastain*, 249 S.E.2d 38, 40-41 (Ga. 1978); *People ex rel. Devine v. Murphy*, 693 N.E.2d 349, 353-54 (Ill. 1998); *Frick v. City of Salina*, 208 P.3d 739, 748-49 (Kan. 2009); *Crouch v. Jefferson Cty., Ky. Police Merit Bd.*, 773 S.W.2d 461, 462-63 (Ky. 1988); *Dep't of Nat. Res. v. Linchester Sand & Gravel Corp.*, 334 A.2d 514, 522-23 (Md. 1975); *Langvardt v. Horton*, 581 N.W.2d 60, 68-69 (Neb. 1998); *Shaw v. Burleigh Cty.*, 286 N.W.2d 792, 797 (N.D. 1979); *Weeks v. Personnel Bd. of Review*, 373 A.2d 176, 177-78 (R.I. 1977); *Quick v. City of Austin*, 7 S.W.3d 109, 114-15 (Tex. 1998).

41 N.W. at 742 ("[T]he test is, [does the administrative act] in a legal sense tend to 'deprive of life, liberty, or property?'"). Thus, as our earliest decisions indicate, quasi-judicial acts are those that could have been "determined as an original action in the [circuit] court[.]" *Champion*, 5 Dakota at 430, 41 N.W. at 742.[8] Or as one commentator has remarked: "Perhaps as good a criterion as any for determining what is judicial is merely to compare the action in question with the ordinary business of courts: that which resembles what courts customarily do is judicial, and that which has no such resemblance is nonjudicial." *Francisco v. Bd. of Dirs. of Bellevue Pub. Sch., Dist. No. 405*, 537 P.2d 789, 792 (Wash. 1975) (en banc) (quoting 3 Kenneth C. Davis, *Administrative Law Treatise* § 24.02).

[¶22.]     Based on the foregoing, a township's vacation of a highway is not a quasi-judicial act. The question decided by the Townships in this case was whether the public interest would be better served by vacating the highway segments. The Townships did not adjudicate existing rights of specific individuals. *See Prentis*, 211 U.S. at 226, 29 S. Ct. at 69; *Conditional Use Permit No. 13-08*, 2014 S.D. 75, ¶ 19, 855 N.W.2d at 842; *Champion*, 5 Dakota at 430, 41 N.W. at 742. And when an administrative board "decides to abandon a road or street because it has ceased to be useful to the public, it is acting prospectively[.]" *Gardner v. Cumberland Town Council*, 826 A.2d 972, 976 (R.I. 2003). Thus, the circuit court could not have been asked in the first instance to determine whether the highway segments at issue should be vacated—such a question is "one of policy." *Rolf v. Town of Hancock*,

---

8.     For example, a drainage complaint filed with a county board against a neighboring landowner could instead be filed as a tort action seeking an injunction in circuit court.

208 N.W. 757, 758 (Minn. 1926). Therefore, as numerous other courts have held, we conclude that the administrative act of vacating a highway is not quasi-judicial. *See Ala. Great S. R.R. Co. v. Denton*, 195 So. 218, 221 (Ala. 1940); *Beals v. City of L.A.*, 144 P.2d 839, 842 (Cal. 1943); *Rolf*, 208 N.W. at 758; *Phillips Mercantile Co. v. City of Albuquerque*, 287 P.2d 77, 85 (N.M. 1955), *overruled on other grounds by Wheeler v. Monroe*, 523 P.2d 540 (N.M. 1974); *Gardner*, 826 A.2d at 976; *Sweetwater Valley Mem'l Park, Inc. v. City of Sweetwater*, 372 S.W.2d 168, 169 (Tenn. 1963); *Am. Oil Co. v. Leaman*, 101 S.E.2d 540, 550 (Va. 1958); *Thomas v. Jultak*, 231 P.2d 974, 979 (Wyo. 1951); 39 Am. Jur. 2d *Highways, Streets, & Bridges* § 171, Westlaw (database updated August 2017); 39A C.J.S. *Highways* § 189, Westlaw (database updated June 2017).

[¶23.] Because the administrative acts in question are not quasi-judicial, de novo judicial review would violate the separation of powers. As explained above, our cases present two options for resolving the appeal of non-quasi-judicial administrative action. Under *Codington County*, we could simply deny a right to appeal altogether. 51 S.D. at 133, 212 N.W. at 626-27. Under *Dunker*, we could hear the appeal but restrict review to a more deferential standard. 80 S.D. at 203, 121 N.W.2d at 16. While both approaches preserve the separation of powers by preventing de novo review of non-quasi-judicial administrative action, we think *Dunker* is the better approach. In passing statutes like SDCL 7-8-27 and -30, SDCL 8-5-8 and -10, and SDCL 13-46-1 and -6, the Legislature clearly intended to give aggrieved persons an avenue for challenging the actions of local governing bodies. These statutes do not distinguish between quasi-judicial and non-quasi-

judicial administrative action. It would seem, then, the Legislature intended to create a right to appeal regardless of whether the aggrieving conduct is quasi-judicial. Therefore, even if non-quasi-judicial administrative action cannot be reviewed de novo, reviewing such action under a more deferential standard of review equally preserves the separation of powers while conforming to the Legislature's intent to the maximum extent possible.

[¶24.]     In summary, when presented with an appeal of administrative action under a statute prescribing de novo review, a circuit court must determine whether the action appealed is quasi-judicial. De novo review is only appropriate if the administrative action is quasi-judicial. Here, the administrative action before the circuit court was not quasi-judicial. Therefore, the circuit court was not permitted to determine whether the Townships correctly concluded the public interest will be better served by vacating the highways. Instead, the question before the circuit court was whether the Townships "acted unreasonably, arbitrarily, or . . . manifestly abused [their] discretion[.]" *Dunker*, 80 S.D. at 203, 121 N.W.2d at 17. As the party asserting that claim, the Department has the burden of proof. *See Pac. States Box & Basket Co. v. White*, 296 U.S. 176, 185, 56 S. Ct. 159, 163, 80 L. Ed. 138 (1935); *Coyote Flats, LLC v. Sanborn Cty. Comm'n*, 1999 S.D. 87, ¶ 8, 596 N.W.2d 347, 349-50. The Department also has the burden of proof in regard to its additional due-process claim. Therefore, the circuit court did not err in imposing the burden of proof on the Department.

[¶25.]     **2.     *Whether vacating the highways will better serve the public interest.***

[¶26.]     Next, the Department argues the circuit court erred by concluding that vacating the highway segments will better serve the public interest. As discussed above, however, this question is one of policy and, therefore, not quasi-judicial. *Supra* ¶¶ 22-23.

> This is a practical legislative determination which has been entrusted to the discretion of the Board, not to the courts. *The wisdom of its decision is not our concern*, since we are not at liberty to substitute our judgment for that of the [township] board on a matter inherently legislative. If the rule were otherwise[,] the circuit courts would become [administrative] boards . . . deciding matters that are nonjudicial.

*Dunker*, 80 S.D. at 203, 121 N.W.2d at 16 (emphasis added). Therefore, we will not examine whether the Townships were correct in determining that the public interest will be better served by vacating the highways.

[¶27.]     **3.     *Whether vacating the highways denied public access to a public resource.***

[¶28.]     Next, the Department argues the circuit court erred by concluding the Townships did not eliminate public access to a public resource. Even if we assume without deciding that the circuit court's factual findings on this point are clearly erroneous, the Department has not explained the relevance of its argument. In its briefs, the Department seems to suggest that a township may not vacate a highway that provides access to a public resource. As explained above, however, the Legislature empowered the townships of this State with the ability to vacate highways within their jurisdictions "if the public interest will be better served by the proposed vacating . . . of the highway." SDCL 31-3-6. Neither this statute nor any other the Department has cited indicates that a township's power to vacate a

highway is further restrained when the highway at issue provides access to a public resource.

[¶29.] Even if the Department had explained the relevance of this argument, it is not persuasive. If the Legislature had meant SDCL 31-3-6 to forbid a vacation that would limit access to a public resource, it could have easily said so. For example, the Legislature has done just that in regard to public *lands*. SDCL 31-3-6.1 ("Notwithstanding any other provisions of [SDCL] chapter [31-3], no county or township may vacate a highway which provides access to public lands."); *see also* SDCL 31-18-3 (same). We are unable to locate a corresponding statute proscribing the vacation of a highway that provides access to public waters sitting atop private lands.[9] If we read such a requirement into SDCL 31-3-6, SDCL 31-3-6.1 would serve no purpose. Because "[w]e assume that the Legislature intended that no part of its statutory scheme be rendered mere surplusage[,]" *Pitt-Hart v. Sanford USD Med. Ctr.*, 2016 S.D. 33, ¶ 13, 878 N.W.2d 406, 411 (quoting *Peters v. Great W. Bank, Inc.*, 2015 S.D. 4, ¶ 8, 859 N.W.2d 618, 622), such a reading is contrary to our well-established rules of statutory construction.

[¶30.] Moreover, the Department's view would essentially negate the discretionary power set out in SDCL 31-3-6. The word *resource* means "[a] useful or valuable quality or possession of a country, state, organization, or person." *Black's*

---

9. In fact, during the 2014 legislative session, the South Dakota Senate considered Senate Bill 169, which proposed amending SDCL 31-3-6.1 to read: "Notwithstanding any other provisions of this chapter, no county or township may vacate a highway which provides access to public lands *or waters open to the public for recreational use*." (Emphasis added.) The Senate tabled the bill. S. Journal, 89th Leg., 1st Sess. 351 (S.D. 2014).

*Law Dictionary* (10th ed. 2014). Under this definition, a highway itself is a public resource. Vacating a highway necessarily prevents the public from accessing that highway. Therefore, under the Department's view, a Township would never be permitted to vacate a township highway as doing so would deny the public access to a public resource. This view reads all meaning out of SDCL 31-3-6.

[¶31.] We think the better view of SDCL 31-3-6 is that it gives a township discretion to weigh competing public interests and determine which is more important to that particular community.[10] At times, this process will necessarily involve subordinating one public interest for another. Therefore, whether the vacations at issue in this case actually cut off access to a public resource is not dispositive. Under SDCL 31-3-6, the question is whether the public harm of cutting off such access (assuming that is the case) is outweighed by the public benefit in vacating the highway at issue. As previously discussed, however, this balancing of competing public interests is a policy question and, therefore, not one properly answered by the courts.

[¶32.]      ***4. Whether the Townships' decisions to vacate segments of the section-line highways were arbitrary.***

[¶33.] Next, the Department argues the Townships' decisions to vacate the highways were arbitrary.[11] The arbitrariness standard of review is narrow, and

---

10.     During oral argument, the Department agreed with this view.

11.     As noted above, the question on appeal was whether the Townships "acted unreasonably, arbitrarily, or . . . manifestly abused [their] discretion[.]" *Dunker*, 80 S.D. at 203, 121 N.W.2d at 17. This phrase refers to multiple standards of review that are applicable in different contexts. Reasonableness

(continued . . .)

under that standard, "a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2866, 77 L. Ed. 2d 443 (1983). An administrative board "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S. Ct. 239, 245-46, 9 L. Ed. 2d 207 (1962)). An administrative board's decision

> would be arbitrary . . . if the [board] has relied on factors which [the Legislature] has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the [board], or is so implausible that it could not be ascribed to a difference in view or the product of . . . expertise.

---

(. . . continued)

> review is another term for substantial-evidence review. 33 Charles H. Koch, Jr., *Federal Practice & Procedure: Judicial Review of Administrative Action* § 8333 (1st ed.), Westlaw (database updated April 2017). Traditionally, "[r]easonableness review is appropriate . . . when the decision was made through a *formal*, trial-like proceeding . . . . The dominant issues in such proceedings tend to be specific or adjudicative facts . . . ." *Id.* (emphasis added). In contrast, "[a]rbitrariness review generally applies to the results of an *informal* process." *Id.* § 8334 (emphasis added). This standard was "[d]eveloped and codified as a review for factfindings and policy choices (reasoning processes) made in an informal setting." Steven A. Childress & Martha S. Davis, *Federal Standards of Review* § 15.07 (2d. ed. 1992). And not surprisingly, the abuse-of-discretion standard applies to an administrative body's acts of reviewable discretion. 33 Koch, *supra*, § 8336.

> The administrative proceedings at issue here were informal and not like a trial, producing little in the way of a reviewable record. Moreover, the issue appealed is best described as a mix of policy and fact (weighing the competing public interests involved). Therefore, the arbitrariness standard of review is appropriate.

*Id.* at 43, 103 S. Ct. at 2867; *accord Coyote Flats, LLC*, 1999 S.D. 87, ¶ 14, 596 N.W.2d at 351 (holding action arbitrary if "based on personal, selfish, or fraudulent motives" (quoting *Tri Cty. Landfill Ass'n, Inc. v. Brule Cty.*, 535 N.W.2d 760, 764 (S.D. 1995)). In other words, "[a] decision is arbitrary . . . when it is 'not governed by any fixed rules or standard.'" *Kirby v. Hoven Sch. Dist. No. 53-2*, 2004 S.D. 100, ¶ 5, 686 N.W.2d 905, 906 (quoting *Johnson v. Lennox Sch. Dist. No. 41-4*, 2002 S.D. 89, ¶ 8, 649 N.W.2d 617, 621).

[¶34.] A township's power to vacate a highway located within the township is subject to few restrictions. Most notably—and the only restriction at issue in the present case—a township may vacate a highway only if the township first determines that "the public interest will be better served by the proposed vacating, changing, or locating of the highway." SDCL 31-3-6. Each resolution and order to vacate indicates that its respective township made such a determination in approving the petitions. Likewise, the circuit court found that each of the Townships "reviewed the condition of the highways within its borders and identified those that no longer served the public interest in expending Township resources to improve or maintain."[12]

[¶35.] Even so, the Department contends each of the Townships' decisions was based on "personal, selfish, fraudulent motives, false information, or a lack of relevant and competent evidence." Again, the circuit court explicitly found to the contrary:

---

12. This language is taken from the court's findings of fact in the Troy Township case. With minor variations, the same language appears in the Valley and Butler Township findings of fact.

> The board of supervisors [of Troy Township] did not exercise personal and selfish motives in reaching the decision to adopt the two resolutions to vacate.
>
> Township's board of supervisors did not use fraudulent or false motives when it reached its decision to vacate the highways listed in the two petitions. Instead, Township's board inspected the township highways, made a determination on which highways no longer needed to be a part of Township's highway system, and moved forward by taking the appropriate action to vacate the selected highways. . . .
>
> Township had relevant and competent information to make its decision in adopting the two resolutions.[13]

The court made the same findings regarding Valley and Butler Townships.

[¶36.] In light of the circuit court's findings, the Department's argument on this issue is entirely a factual matter. A circuit court's "factual findings will not be disturbed unless they are clearly erroneous." *Aguilar v. Aguilar*, 2016 S.D. 20, ¶ 9, 877 N.W.2d 333, 336.

> The question is not whether this Court would have made the same findings that the trial court did, but whether on the entire evidence we are left with a definite and firm conviction that a mistake has been committed. This Court is not free to disturb the lower court's findings unless it is satisfied that they are contrary to a clear preponderance of the evidence. Doubts about whether the evidence supports the court's finding of fact are to be resolved in favor of the successful party's version of the evidence and of all inferences fairly deducible therefrom which are favorable to the court's action.

*Gartner v. Temple*, 2014 S.D. 74, ¶ 8, 855 N.W.2d 846, 850 (quoting *Estate of Olson*, 2008 S.D. 97, ¶ 9, 757 N.W.2d 219, 222). Furthermore, we "give due regard to the opportunity of the circuit court to judge the credibility of witnesses and to weigh

---

13.   The circuit court mistakenly labeled these factual matters as conclusions of law.

their testimony properly." *Aguilar*, 2016 S.D. 20, ¶ 9, 877 N.W.2d at 336 (quoting *In re Guardianship of S.M.N.*, 2010 S.D. 31, ¶ 11, 781 N.W.2d 213, 218).

[¶37.]     The Department raises a number of points.  In regard to all three Townships, the Department contends: (1) many of the Townships' board members personally benefitted—or were related to individuals who benefitted—from the vacations; (2) the Townships' concern about their potential liability was unfounded; (3) the Townships acted without any relevant or competent information; and (4) the Townships predetermined the outcome of their respective hearings by drafting the petitions.  Additionally, the Department contends that statements of Troy Township's Chairman Duerre prove that it considered inappropriate factors.

[¶38.]     The Department first contends that many of the Townships' board members personally or indirectly benefitted from the highway vacations.  In the Department's view, a landowner benefits when the public is unable to access the landowner's property.  Because a number of the Townships' board members own land adjoining the vacated highways, the Department concludes the Townships must have been motivated by such alleged benefit.  In essence, the Department suggests that we may simply infer the Townships acted on an improper purpose. On the contrary, however, "[a]dministrative officials are presumed to be objective and capable of judging controversies fairly on the basis of their own circumstances." *Nw. Bell Tel. Co. v. Stofferahn*, 461 N.W.2d 129, 133 (S.D. 1990) (citing *United States v. Morgan*, 313 U.S. 409, 421, 61 S. Ct. 999, 1004, 85 L. Ed. 1429 (1941)). Even if we accept the Department's assertion that some benefit inured to the Townships' board members by virtue of the highway vacations, the fact that such

occurred does not prove the Townships approved the petitions for the purpose of obtaining those benefits.

[¶39.] Next, the Department contends the Townships' concern regarding their potential liability is legally unfounded. As the circuit court found, the Townships expressed a concern that many of the section-line highways were dangerous or impassable. The court found that the Townships decided the safety of the traveling public and the interest of the Townships in avoiding liability for injuries to the traveling public justified vacating the highways. On appeal, the Department contends the Townships would be shielded from liability by sovereign immunity. Even assuming the Department's view of sovereign immunity is correct, the Townships would only be protected from liability—not from the time and expense of defending themselves in court. Moreover, the Department's sovereign-immunity argument ignores the Townships' stated concerns for public safety.

[¶40.] The Department also contends the Townships acted without any relevant or competent information. The Department devotes only two sentences to this argument in its brief:

> A lack of relevant or competent information is evidenced by Troy Township's failure to provide a transcript of the hearing, failure to provide a defensible reason why vacating the public highways better serves the public interest, and its failure to analyze public interest. In fact, the testimony indicates otherwise.[14]

The Department does not actually cite or quote any relevant testimony. These conclusory claims amount to little more than another invitation to infer wrongdoing.

---

14. The Department's commentary on this point regarding Valley and Butler Townships is equally terse.

-23-

Moreover, the Department's argument overlooks the fact that the Townships' board members are necessarily residents of their respective townships; have first-hand knowledge of the highways and conditions at issue; and as the Department itself points out, are fully aware of the competing interests.

[¶41.]     After reviewing the Department's arguments, we are not definitely and firmly convinced the circuit court's findings regarding Valley and Butler Townships are erroneous. *See Aguilar*, 2016 S.D. 20, ¶ 9, 877 N.W.2d at 336. Consequently, we will not disturb the court's findings. The court's findings establish those Townships "examine[d] the relevant data and articulate[d] a satisfactory explanation for [their] action[s.]" *Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 43, 103 S. Ct. at 2866 (quoting *Burlington Truck Lines*, 371 U.S. at 168, 83 S. Ct. at 245-46). Therefore, we agree with the circuit court that those Townships did not act arbitrarily in approving the petitions.

[¶42.]     However, statements made by Chairman Duerre indicate Troy Township considered factors the Legislature did not intend it to consider in deciding whether to vacate a highway. Two witnesses testified before the circuit court regarding comments made by Chairman Duerre following the July 22 vote approving the petition. According to those witnesses, Chairman Duerre said: "[T]his is our land, these are our roads, this is our water and these are our fish and you're not gonna have access to them."[15] Contemporaneous with these statements, two-thirds of Troy Township's board members were contemplating litigation to

---

15.     When asked on cross-examination whether he made these statements, Chairman Duerre admitted it was "[v]ery possible."

accomplish the very same. Only two weeks after the July 22 vote, Chairman Duerre, Supervisor Herr, and others filed a complaint against the State, the Department (and its Secretary), and "certain unnamed defendants for declaratory and injunctive relief concerning the public's right to use the waters and ice overlying the landowners' private property for recreational purposes." *Duerre*, 2017 S.D. 8, ¶ 1, 892 N.W.2d at 213.[16] Read in context, then, Chairman Duerre's statements strongly indicate that Troy Township's decision to approve the petitions was based not on a determination that vacating the highway segments would better serve the public interest but rather on a determination that doing so would better prevent public access. Because "the [township] has relied on factors which [the Legislature] has not intended it to consider," Troy Township's resolutions and orders were arbitrary. *Motor Vehicle Mfrs. Ass'n of U.S.*, 463 U.S. at 43, 103 S. Ct. at 2867.

[¶43.]    **5.    *Whether the Townships denied the Department due process.***

[¶44.]    Finally, the Department argues "[t]he requirements of due process apply to adversarial administrative proceedings" and that it was entitled to a "fair and impartial hearing[.]" According to the Department, the Townships were biased and their hearings failed to conform to a number of statutory requirements. As noted in the previous section, the Department contends the Townships predetermined the outcome of their respective hearings. The Department claims

---

16.    The unnamed defendants were identified as those "who have used or intend to use the floodwaters located on [Duerre or Herr] property for recreational purposes." *Duerre*, 2017 S.D. 8, ¶ 1, 892 N.W.2d at 213.

the Townships violated SDCL 8-3-4 by failing to properly publish notice of special meetings. It also claims the Townships violated a number of additional statutes. Therefore, according to the Department, it is entitled to another hearing.

[¶45.] The Fourteenth Amendment to the United States Constitution states that no "State shall deprive any person of life, liberty, or property, without due process of law[.]"[17] When administrative action does not adjudicate the life, liberty, or property of specific individuals, it is not quasi-judicial, and therefore, "constitutional due process requirements do not apply[.]" *Kraft v. Meade Cty. ex rel. Bd. of Cty. Comm'rs*, 2006 S.D. 113, ¶ 5, 726 N.W.2d 237, 240; *accord Dunker*, 80 S.D. at 197, 121 N.W.2d at 13 (holding exercise of delegated legislative authority by administrative board is "not subject to the due process clause"); *75 Acres, LLC v. Miami-Dade Cty.*, 338 F.3d 1288, 1294 (11th Cir. 2003); *see also Champion*, 5 Dakota at 430, 41 N.W. at 742 (holding due process applies when administrative action deprives a person of life, liberty, or property). Thus, "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function

---

17. The Department does not address the preliminary question whether it qualifies as a "person" within the meaning of the U.S. and South Dakota Constitutions, nor does it offer any authority suggesting that a state agency is entitled to Fourteenth Amendment protections against a political subdivision of the same state. "A political subdivision of a state cannot invoke the protection of the fourteenth amendment against the state." *Delta Special Sch. Dist. No. 5 v. State Bd. of Educ.*, 745 F.2d 532, 533 (8th Cir. 1984) (citing *City of Trenton v. New Jersey*, 262 U.S. 182, 43 S. Ct. 534, 67 L. Ed. 937 (1923)). "For the same reasons, a political subdivision of a state cannot challenge the constitutionality of another political subdivision's ordinance on due process and equal protection grounds." *S. Macomb Disposal Auth. v. Washington Twp.*, 790 F.2d 500, 505 (6th Cir. 1986).

involved as well as of the private interest that has been affected by government action." *Kraft*, 2006 S.D. 113, ¶ 5, 726 N.W.2d at 240-41 (quoting *In re S.D. Water Mgmt. Bd. Approving Water Permit No. 1791-2*, 351 N.W.2d 119, 123 (S.D. 1984)). As previously discussed, the act of vacating a highway is not quasi-judicial. Therefore, the administrative action complained of in this case "is not subject to the requirements of [the] due process [clauses]"—even if it resulted in some "injurious consequences." *Kraft*, 2006 S.D. 113, ¶ 7, 726 N.W.2d at 241 (citing *Hunter v. Pittsburgh*, 207 U.S. 161, 178-79, 28 S. Ct. 40, 46-47, 52 L. Ed. 151 (1907)).

[¶46.] Because neither the Fourteenth Amendment to the U.S. Constitution nor Article VI of the South Dakota Constitution apply in this case, the only process due the Department is that prescribed by statute. According to the Department, the Townships violated SDCL 8-3-1, 8-3-4, 8-3-15, 8-5-1, 8-5-9, 31-3-6, and 31-3-7. Several of these statutes have nothing to do with the procedural requirements of approving a petition to vacate a highway, including SDCL 8-3-15 (addressing method of electing township officers) and SDCL 8-5-9 (requiring, among other things, a township board of supervisors to file a transcript of its proceedings within 30 days after receiving notice of an appeal). Even if these two statutes could be considered procedural requirements, "proof of prejudice is generally a necessary . . . element of a due process claim[.]" *State v. Stock*, 361 N.W.2d 280, 283 (S.D. 1985) (quoting *United States v. Lovasco*, 431 U.S. 783, 790, 97 S. Ct. 2044, 2048-49, 52 L. Ed. 2d 752 (1977)); *accord Ka Fung Chan v. INS*, 634 F.2d 248, 258 (5th Cir. 1981) ("[P]roof of a denial of due process in an administrative proceeding requires a

showing of substantial prejudice."). The Department has failed to argue that either alleged violation was prejudicial.[18]

[¶47.]      The Department's argument regarding SDCL 31-3-6 similarly fails. Under SDCL 31-3-6: "*The petition of the voters* shall set forth the beginning, course, and termination of the highway proposed to be located, changed, or vacated, together with the names of the owners of the land through which the highway may pass." (Emphasis added.) As the emphasized text indicates, this is a requirement imposed on the *petition*, not the township board. The notice statute that corresponds with SDCL 31-3-6 requires only "a legal description of the location of the highway and the action proposed by the petition and how information, opinions, and arguments may be presented by any person unable to attend the hearing." SDCL 31-3-7. And as above, the Department has failed to explain how it was prejudiced by this alleged statutory violation.

[¶48.]      The Department's remaining arguments each involve various notice requirements. The Department contends that all three Townships violated SDCL 8-3-4, which requires a township to publish notice of a special meeting. According to

---

18.    The elections that the Department refers to involved sitting members of the Townships' boards seeking reelection unopposed. The elections were conducted by verbal vote rather than paper ballot as prescribed by SDCL 8-3-15. The Department has not explained how the township elections would have been different had paper ballots been used.

The Department's argument regarding SDCL 8-5-9 is even more problematic. The Department alleges the Townships failed to generate transcripts of the hearings in which they approved the vacation petitions. But such transcripts necessarily cannot be generated until *after* the decision to vacate has been made. Thus, any alleged violation of SDCL 8-5-9 necessarily could not have affected the procedure leading up to the administrative action complained of in this case.

the Department, Troy Township held special meetings without notice on April 24, July 7, and July 21, 2014. However, the circuit court found that although some discussion occurred at these meetings regarding the proposed highway vacations, the Township took no action on the petitions. Thus, any failure of notice that might have occurred in regard to Troy Township's special meetings necessarily did not affect a liberty or property interest of the Department.

[¶49.] Next, the Department claims Valley Township violated SDCL 8-3-4 and 8-5-1, which also require that when notice is given for a regular or special meeting, the notice must include "the time and place" of the meeting. The Department asserts that notice for Valley Township's August 5, 2014 meeting indicated a location of "home of Brent Zimmerman" but did not give a physical address. The Department makes the same argument in regard to the notice for Butler Township's August 11, 2014 meeting, which indicated a location of "Dennis Johnson's Shop." Although notice of a physical mailing address is preferable, SDCL 8-3-4 and -5-1 do not explicitly require such—these statutes simply require a "place." While the descriptions at issue here may not always be sufficient to effectively communicate the place of meeting, they were in this case.[19] According to the circuit court, it took less than two minutes to locate the physical address for each location in a phone book.

---

19. The sufficiency of the description could depend on a number of factors, including the size of the local population base and the unusualness of the given name. This potential problem is easily avoided by including a physical mailing address.

[¶50.] Moreover, as with its other statutory arguments, the Department again fails to argue it was prejudiced by the Boards' alleged failures in notice. The Department received actual notice from Troy and Butler Townships (as evidenced by the Department's letters sent to those townships). It had constructive notice from Valley Township. And the Department's objections to the vacations in Butler Township actually caused that township to reject two of the proposed vacations. Therefore, the Department has failed to establish prejudice in regard to any of the Townships' alleged statutory violations.

## Conclusion

[¶51.] The separation-of-powers doctrine proscribes de novo review of administrative action that is not quasi-judicial. The administrative act of vacating a highway is not quasi-judicial. Therefore, the correctness of the Townships' decisions to vacate the highway segments at issue may not be reviewed; we consider only whether the Townships acted arbitrarily. The Department has the burden of proof. The circuit court's findings establish that the Valley and Butler Townships' actions were not arbitrary, and the Department has not met its burden of proving the court's findings to be clearly erroneous in regard to these townships. However, Chairman Duerre's statements—considered in the broader context of the ongoing Day County saga—clearly establish that Troy Township improperly based its decision to approve the petitions on the resulting loss of public access. Therefore, we conclude Troy Township acted arbitrarily. Finally, the Department was not denied due process.

[¶52.] We affirm the circuit court's decisions regarding Valley and Butler Townships. We reverse the court's decision regarding Troy Township and remand. The court must remand the issue back to the Troy Township Board of Supervisors for rehearing.

[¶53.] ZINTER, SEVERSON, and KERN, Justices, and WILBUR, Retired Justice, concur.