#28525-a-SRJ
**2019 S.D. 3**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IN THE MATTER OF THE DRAINAGE
PERMIT 11-81 and 12-142,
JASON MCAREAVEY, APPLICANT,

| | |
|---|---|
| MARK DESCHEPPER, | Appellant, |

v.

| | |
|---|---|
| THE BOARD OF COMMISSIONERS, MINNEHAHA COUNTY, SOUTH DAKOTA | Respondent and Appellee, |

and

| | |
|---|---|
| JASON MCAREAVEY and VERNON MCAREAVEY, | Appellees. |

-------------------------------------------------------------------------------------------------------------

| | |
|---|---|
| MARK DESCHEPPER, | Plaintiff and Appellant, |

v.

| | |
|---|---|
| VERNON R. MCAREAVEY and THE BOARD OF COMMISSIONERS, MINNEHAHA COUNTY, SOUTH DAKOTA | Defendants and Appellees. |

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARK SALTER
Judge

* * * *

ARGUED ON
AUGUST 28, 2018
OPINION FILED **01/09/19**

****

A.J. SWANSON
Canton, South Dakota

Attorney for appellant and plaintiff-appellant.

JAMES A. POWER
JAMES E. MOORE of
Woods, Fuller, Shultz
    & Smith P.C.
Sioux Falls, South Dakota

Attorneys for respondent-appellee, Board of Commissioners, Minnehaha County.

JUSTIN T. CLARKE
VINCE M. ROCHE of
Davenport, Evans, Hurwitz
    & Smith, LLP
Sioux Falls, South Dakota

Attorneys for appellees, Jason McAreavey and Vernon McAreavey.

#28525

JENSEN, Justice

[¶1.]        Mark DeSchepper appeals the circuit court's determination that the Minnehaha County Board of Commissioners (County) properly granted two drainage permits to Jason and Vernon McAreavey (McAreaveys).  DeSchepper also claims that the court erred in granting summary judgment dismissing his claims for damages, injunctive relief, and abatement of nuisance against the McAreaveys and the County.  We affirm.

## Background

[¶2.]        The McAreaveys and DeSchepper own land in and around Twin Lake, a small lake located in Clear Lake Township in rural Minnehaha County.  Twin Lake was originally comprised of north and south bodies of water, but the two are now joined into one contiguous lake.  Twin Lake lies mostly on Section 17 of Clear Lake Township and measures approximately 341 acres.  Smaller portions of Twin Lake and its 979-acre watershed extend onto Sections 16, 18, 19, 20, and 21. DeSchepper owns and farms land on the southwest quarter of Section 17.  The McAreaveys own and farm the northwest quarter of Section 17 and the northwest quarter of Section 20 on the southern edge of Twin Lake.  The State owns the east half of Section 17 where Twin Lake is predominantly located.

[¶3.]        The McAreaveys installed drain tile on their property in 2008 and 2009.  The drain tile installed by the McAreaveys consisted of four, six-inch pipes designed to drain water from their crop land into or in the direction of Twin Lake. The tiles are perforated tubes buried approximately three feet below the ground's surface.  All the tile, including the outlets, lie entirely on the McAreaveys' land:

-1-

three on the southern edge of Twin Lake, and the fourth on the northern portion of Twin Lake. The northern outlet is submerged by Twin Lake, which has engulfed a portion of the McAreaveys' land along Twin Lake. The other three outlets have also at times been submerged by Twin Lake.

[¶4.] Before constructing the 2008 tiling, the McAreaveys applied to the County for a drainage permit. This application was approved by a County administrative official without prior notice to DeSchepper. The McAreaveys installed the 2009 tiling without requesting a permit from the County. The McAreaveys subsequently sought approval of the 2009 tiling, but their application was denied by the County.

[¶5.] In 2011 and 2012, the McAreaveys submitted two additional drainage permit applications to the County: ADP 11-81 and ADP 12-142. ADP 11-81 sought permission to expand the 2008 and 2009 drain tile by adding a system of smaller tile to run lateral to the previously installed tile. ADP 12-142 sought approval of all the 2008 and 2009 tiling, including the still unapproved 2009 tiling. DeSchepper was given notice of both applications and objected to the permit requests. Both applications were considered and approved by the County at brief public hearings on August 9, 2011 and September 12, 2012, respectively.

[¶6.] DeSchepper separately appealed the County's approvals of the McAreaveys' two drainage permits to the circuit court. DeSchepper also filed an action for declaratory judgment against the McAreaveys and the County, alleging that the drainage permits issued by the County for the 2008 tiling were null and void due to a of lack of notice. DeSchepper's also sought injunctive relief, claims for

nuisance and trespass against the McAreaveys, and an inverse condemnation claim against the County. DeSchepper's actions were consolidated before the circuit court.

[¶7.] The McAreaveys and the County moved for summary judgment on all of DeSchepper's claims, except the drainage permit appeals. The circuit court dismissed DeSchepper's claim for damages explaining that DeSchepper could not prove legal causation absent expert testimony showing that the McAreaveys' drain tile was a substantial factor in causing Twin Lake to rise. The court also determined that the request for a declaratory judgment was rendered moot by the County's approval of ADP 12-142 following proper notice and hearing. The circuit court determined that despite the lack of causation evidence to support damages, summary judgment was premature on the equitable claims for injunctive relief and nuisance abatement.

[¶8.] In July 2016, the circuit court heard DeSchepper's appeals of ADP 11-81 and ADP 12-142 at a trial de novo. The principal issue was whether the McAreaveys' drain tile had increased the amount of water drained into Twin Lake. Both parties offered testimony during the trial.

[¶9.] DeSchepper offered testimony from geologist Timothy Kenyon. Kenyon testified that the Twin Lake basin has a non-permeable floor, so there is no outlet for any additional water drained into Twin Lake from the McAreaveys' land. Kenyon believed that the installation of drain tile on the McAreaveys' land resulted in a net increase of water flowing into Twin Lake, despite acknowledging that he had not attempted to measure the amount of water flowing into Twin Lake from the

McAreaveys' drain tile and could not quantify the flow. Kenyon was unable to provide an opinion whether the drain tile was a substantial factor in causing the level of Twin Lake to rise.

[¶10.]     The McAreaveys and the County presented testimony from Dr. Gary Sands, an agricultural engineer. Dr. Sands testified, to a reasonable degree of scientific probability, that the McAreaveys' drain tile did not increase the water yield into Twin Lake. Dr. Sands made this determination using the water balance equation, which calculates hydrologic balance and considers factors such as precipitation, evaporation, plant transpiration (the amount of moisture carried from plant roots, through the plant, and released into the atmosphere), surface runoff, changes in soil moisture, deep seepage, and any artificial drainage. Dr. Sands noted that even though there was a possibility that the McAreaveys' tile increased water flow into Twin Lake, the more probable scenario was that the tile actually *decreased* flow into the lake.

[¶11.]     Both parties presented lay testimony on the question whether the McAreaveys' drain tile had increased the water draining into Twin Lake. DeSchepper testified that he believed the drainage tile system was increasing the amount of water draining into Twin Lake but conceded that he could not quantify any increase. DeSchepper also acknowledged that (1) heavy precipitation in 2011 made it difficult to account for the impact of the tile during that time, (2) Twin Lake's water levels started to rise in 1999 before the McAreaveys installed the drain tile, and (3) Twin Lake's water levels had decreased since 2011. Jason McAreavey (Jason) claimed that the drain tile had not increased the drainage into Twin Lake.

He noted that since installing the tile, he was farming more of his land adjacent to Twin Lake because the lake had receded six feet since its peak in 2011. Jason also testified that it was contrary to his interests to increase the amount of water draining into Twin Lake, as that would have an adverse impact on his land bordering the Lake.

[¶12.] Following the trial, the circuit court entered a memorandum opinion affirming the County's approval of the McAreaveys' permit applications. The circuit court found that the evidence did not show that the McAreaveys' drain tile increased the amount of water draining into Twin Lake. The court also found that DeSchepper had failed to prove the additional water in Twin Lake was attributable to the drain tile.

[¶13.] The McAreaveys subsequently renewed their motion for summary judgment on the claims for injunctive relief and abatement of a nuisance. The circuit court granted summary judgment on both claims, incorporating by reference the court's prior summary judgment ruling and the decision affirming the County appeals.

[¶14.] DeSchepper appeals the circuit court's decision, raising several issues that we restate as follows:

1. Whether the circuit court erred in affirming the County's approval of the McAreaveys' two drainage applications under the civil law rule.

2. Whether the County's assertion of jurisdiction over ADP 12-142 was infirm because of bias, self-interest, or inherent conflict of interest.

3. Whether the circuit court erred in granting summary judgment on DeSchepper's claim for damages after determining that expert testimony was necessary to show causation.

4. Whether the circuit court erred in granting summary judgment on the McAreaveys' claims for injunctive relief and abatement of a nuisance.

**Standard of Review**

[¶15.] If an action taken by a county board of commissioners is challenged, a circuit court may conduct a de novo review if that action is quasi-judicial. *Oyen v. Lawrence Cty. Comm'n*, 2017 S.D. 81, ¶ 6, 905 N.W.2d 304, 306 (citing *S.D. Dep't of GF&P v. Troy Twp.*, 2017 S.D. 50, ¶ 20, 900 N.W.2d 840, 849). "An administrative action is quasi-judicial if it 'investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist rather than looking to the future and changing existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power.'" *Id.* (quoting *Troy Twp.*, 2017 S.D. 50, ¶ 21, 900 N.W.2d at 849). "Thus[,] quasi-judicial acts are those that could have been determined as an original action in the circuit court." *Id.* (quoting *Troy Twp.*, 2017 S.D. 50, ¶ 21, 900 N.W.2d at 849). This Court has held that "an adjudication of a land-drainage dispute between two landowners [is] quasi-judicial." *Surat Farms, LLC v. Brule Cty. Bd. of Comm'ns*, 2017 S.D. 52, ¶ 11, 901 N.W.2d 365, 369. In conducting de novo review, we review the circuit court's findings of fact for clear error and give no deference to the circuit court's conclusions of law. *Id.* ¶ 12.

[¶16.] "Our standard of review on a grant or denial of summary judgment under SDCL 15-6-56(c) is well settled." *Garrido v. Team Auto Sales, Inc.*, 2018 S.D. 41, ¶ 15, 913 N.W.2d 95, 100 (quoting *McKie Ford Lincoln, Inc. v. Hanna*, 2018 S.D. 14, ¶ 8, 907 N.W.2d 795, 798).

> Summary judgment is proper where, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We will affirm only when no genuine issues of material fact exist and the law was applied correctly. We make all reasonable inferences drawn from the facts in the light most favorable to the non-moving party. In addition, the moving party has the burden of clearly demonstrating an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law.

*Id.* (quoting *Hanna*, 2018 S.D. 14, ¶ 8, 907 N.W.2d at 798).

## Analysis

### 1. *Whether the circuit court erred in affirming the County's approval of the McAreaveys' two drainage applications under the civil law rule.*

#### a. *Whether the civil law rule is applicable to the McAreaveys' drainage tile.*

[¶17.]     DeSchepper argues that the circuit court erred in applying the civil law rule for drainage to the tile constructed by the McAreaveys because: (1) the rule is inapplicable to underground drain tile that drains "subsurface" water rather than surface water; and (2) Twin Lake is not a natural or established watercourse into which the McAreaveys' drain tile can discharge water. The McAreaveys and the County respond that the McAreaveys' drain tile falls within the purview of the civil law rule.

[¶18.]     "For rural surface water drainage, South Dakota follows the civil law rule," *Zwart v. Penning*, 2018 S.D. 40, ¶ 10, 912 N.W.2d 833, 837 (quoting *Surat Farms*, 2017 S.D. 52, ¶ 15, 901 N.W.2d at 370), which is codified at

SDCL 46A-10A-70.[1]  Further, SDCL 46A-10A-20,[2] which vests control of rural

drainage management with local commissions or boards, contains the elements of

the civil law rule.

[¶19.]     "The civil law rule burdens the owner of agricultural property located

downstream 'with an easement under which the dominant, or upper property owner

may reasonably discharge surface water over the servient estate through natural

watercourses.'" *Zwart*, 2018 S.D. 40, ¶ 10, 912 N.W.2d at 837 (quoting *Knodel v.

Kassel Twp.*, 1998 S.D. 73, ¶ 10, 581 N.W.2d 504, 507).  "A dominant estate holder

---

1.     SDCL 46A-10A-70 provides:

> Subject to any official controls pursuant to this chapter and chapter 46A-11, owners of land may drain the land in the general course of natural drainage by constructing open or covered drains and discharging the water into any natural watercourse, into any established watercourse, or into any natural depression whereby the water will be carried into a natural watercourse, into an established watercourse, or into a drain on a public highway, conditioned on consent of the board having supervision of the highway.  If such drainage is wholly upon an owner's land, the owner is not liable in damages to any person.  Nothing in this section affects the rights or liabilities of landowners in respect to running waters or streams.

2.     SDCL 46A-10A-20 provides that local drainage boards may provide for drainage controls if

> (1) The land receiving the drainage remains rural in character;
> (2) The land being drained is used in a reasonable manner;
> (3) The drainage creates no unreasonable hardship or injury to the owner of the land receiving the drainage;
> (4) The drainage is natural and occurs by means of a natural [watercourse] or established [watercourse];
> (5) The owner of the land being drained does not substantially alter on a permanent basis the course of flow, the amount of flow, or the time of flow from that which would occur; and
> (6) No other feasible alternative drainage system is available that will produce less harm without substantially greater cost to the owner of the land being drained.

has no right to discharge surface water by artificial means onto the property of another." *Id.* (quoting *Hendrickson v. Wagners, Inc.*, 1999 S.D. 74, ¶ 10, 598 N.W.2d 507, 510). However, "the owner of a dominant estate is permitted to drain water onto a servient estate by means of an established" or natural watercourse. *Id.* (quoting *Magner v. Brinkman*, 2016 S.D. 50, ¶ 15, 883 N.W.2d 74, 81).[3] Overall, "the civil law rule is conditioned upon the fact that the drainage [of the dominant estate] must be accomplished without unreasonable injury to the servient estate." *Winterton v. Elverson*, 389 N.W.2d 633, 635 (S.D. 1986).

[¶20.] "Additionally, 'it is impermissible for a dominant landowner to collect surface waters, and then cast them upon the servient estate in unusual or unnatural quantities.'" *Rumpza v. Zubke*, 2017 S.D. 49, ¶ 12, 900 N.W.2d 601, 605-06 (quoting *Winterton*, 389 N.W.2d at 635). "This is true even if the total volume of water remains the same." *Id.* "Surface water cannot be gathered together and cast in a body on the property of the lower owner so as to affect that neighbor's land in some other way than the way in which it has been affected." *Id.* (quoting *Winterton*, 389 N.W.2d at 635).

[¶21.] DeSchepper initially contends that an underground tile system, such as the one installed by the McAreaveys, drains subsurface water and is excluded from the civil law rule. He argues that because the civil law rule is inapplicable to the McAreaveys' drainage, the County could not rely on its local ordinances enacted

---

3. An established watercourse and a natural watercourse are statutorily defined in SDCL 46A-10A-1(9) and SDCL 46A-10A-1(15).

under the authority of SDCL 46A-10A-20 to approve the McAreaveys' drainage applications.

[¶22.] DeSchepper's claims are not supported by our statutes, case law, or the facts in the record. The Legislature's codification of the civil law rule permits the use of covered drains, as well as pipes and tiles as part of a drainage scheme under the civil law rule. SDCL 46A-10A-70 permits a land owner, subject to county ordinances and authorization, to drain the land "in the general course of natural drainage by constructing open *or covered drains . . . .*" (Emphasis added.) The statutes do not define the term covered drains, but SDCL 46A-10A-1(2) defines the term "closed drain" to include a "man-made drain or drainage scheme utilizing pipes, tiles, or other material and constructed in such a way that flow of water is not visible." The statutes impose no requirement that a "covered drain" or "closed drain" run above ground.

[¶23.] Our case law also demonstrates the applicability of the civil law rule to an underground tile system. In *Winterton*, we applied the civil law rule to "a tile drainage system [used by the defendant] . . . to enhance [land] productivity and to reduce erosion." 389 N.W.2d at 634. We noted that "[t]he system drained only surface water and discharged it into [a] natural drainage waterway." *Id. Winterton* did not suggest that the civil law rule was inapplicable to an underground drain tile or that the installation of such tile was per se unreasonable. Rather, applying the civil law rule to the drain tile, we affirmed the circuit court's determination "that [the defendant was] draining surface waters and casting them upon [the plaintiff's]

property in unnatural or unusual quantities" in violation of the civil law rule. *Id.* at 635.

[¶24.] More recently, in *Rumpza*, we again applied the civil law rule to a tile drainage system installed by a defendant.[4] 2017 S.D. 49, ¶ 12, 900 N.W.2d at 605-06. The plaintiffs in *Rumpza* argued that the drain tile, and other drainage modifications, increased the water flow to their land. *Id.* ¶ 5, 900 N.W.2d at 604. The circuit court found for the plaintiffs, awarded damages, and required the defendant to immediately remove the drain tile they had installed. *Id.* We affirmed, applying the civil law rule and citing *Winterton*. *Rumpza* determined that the circuit court did not err in finding that there was a "causative link between the actions of the [defendants] and the injury complained of." *Id.* ¶ 15, 900 N.W.2d at 607. *Rumpza* also held that the defendants failed to "establish that the circuit court clearly erred in finding that their drainage modifications [had] caused the watercourse to be continually wet." *Id.*

[¶25.] DeSchepper's claim that the McAreaveys drain tile was draining subsurface water rather than surface water is also not supported on the record before this Court. DeSchepper presented expert testimony that underground cracks or fissures in the Twin Lake watershed retained subsurface water that is now drained by the McAreaveys' tile. In contrast, the McAreaveys' expert testified that the tile was draining surface water. After listening to the evidence, the circuit court

---

4. In addition to drain tile, the defendant land owners installed a pump to drain water from the southwest corner of their property. The pump engaged whenever a constructed detention pond became too full and pumped the water directly onto the plaintiff's property.

rejected Kenyon's testimony and found that the water draining through the tile was not "new water" being drained from fissures in the subsurface of the soil. The court also highlighted that "the drainage for the McAreaveys' tile is natural in the sense it includes water only from the Twin Lake watershed which flows in the direction it would naturally." The circuit court noted that the water being drained was water that originated on the surface of the McAreaveys' land and was, in turn, captured by the drain tile below the surface of the ground. "Whether waters are of a nature to be treated as 'surface waters' for the purposes of drainage must, in each case, be a question of fact to be determined from the evidence." *Thompson v. Andrews*, 39 S.D. 477, 165 N.W. 9, 13 (1917). DeSchepper has not demonstrated that the circuit court's findings are clearly erroneous.

[¶26.] DeSchepper next argues that Twin Lake is not a natural or established watercourse into which water draining from the McAreaveys' tile may be discharged under SDCL 46A-10A-70 and SDCL 46A-10A-20(4). He further contends that even if Twin Lake is a natural depression under SDCL 46A-10A-70, that statute only permits drainage into a natural depression when "the water will be carried into a natural watercourse, into an established watercourse or into a drain on a public highway."

[¶27.] Under DeSchepper's reading of SDCL 46A-10A-20 and SDCL 46A-10A-70, any system of drainage that drains water into a pond or lake would be impermissible, even if the water naturally drains into such a body of water. This is contrary to a plain reading of the statutes. SDCL 46A-10A-70 permits a landowner, with county approval, to "drain the land in the general course

of the natural drainage by constructing . . . covered drains and discharging the water" into *any* established or natural watercourse. SDCL 46A-10A-1(15) defines a natural watercourse as the route that water "naturally flows from one parcel of real property to another *due to the conformation of the land.*" (Emphasis added.)

[¶28.] The evidence shows that water flows naturally from the higher elevations to the lower elevations within the Twin Lake watershed *due to the conformation of the land.* This is the natural watercourse for drainage within the watershed. As the circuit court found, "[t]he presence of the tiles does not alter that course." The drain tile installed by the McAreaveys follows this natural watercourse; therefore, the drain tile installed by the McAreaveys follows the natural watercourse. DeSchepper does not challenge the court's finding. Further, DeSchepper failed to make a showing that any of the water drained through the McAreaveys' tile came from outside the Twin Lake watershed.

[¶29.] Due to the increased water levels in Twin Lake, one or more of the drain tile outlets have at times been submerged by Twin Lake and discharged directly into Twin Lake. However, regardless of whether the outlets discharge water directly into Twin Lake or on the land adjacent to Twin Lake, the water draining from the McAreaveys' land continued to follow the same route it would follow naturally by ultimately draining into Twin Lake. This is the natural watercourse within the Twin Lake watershed. As this Court stated in *Thompson*, "[c]ourts are quite generally agreed that the waters that can be drained from the dominant estate over the servient estate are waters that can be drained from the

one estate to the other in accordance with the general course of natural drainage for the basin wherein such waters are found . . . ."

[¶30.] The circuit court did not error in applying the civil law rule to the McAreaveys' drainage.

    *b.*  *Whether the circuit court correctly applied the civil law rule.*

[¶31.] In applying the civil law rule, the circuit court found that the McAreaveys' tile discharged the same amount of water that would have naturally drained into Twin Lake. The circuit court also found that there was insufficient evidence showing that the McAreaveys' tile contributed to the rise of Twin Lake. Therefore, the court concluded that water from the McAreaveys' land had not been cast upon DeSchepper's land in unusual or unnatural quantities and that the drain tile had not damaged DeSchepper's property.

[¶32.] The circuit court's findings were based, in part, on its assessment that Kenyon, DeSchepper's expert witness, failed to account for "accepted hydrologic principles and research, beyond the area's geologic features" when he testified that the McAreaveys' drain tile resulted in a net increase of water flowing into Twin Lake. Further, the court found Dr. Sands's expert testimony more persuasive based on Dr. Sands's: (1) background as an agricultural engineer; (2) history of teaching at the University of Minnesota; (3) professional concentration on hydrology and the effects of drainage on crops; (4) application of hydrologic principles such as the accepted water balance formula; and (5) utilization of field research.

[¶33.] The court also considered testimony from DeSchepper and Jason concerning the water levels of Twin Lake. The court concluded that Jason's

testimony was more credible because it was based on expert consultations during the drainage application process, observations of Twin Lake made during a lifetime of living and farming in the area, and his view it would be contrary to the McAreaveys' own interests to increase Twin Lake's water level and further inundate parcels of their land located next to the lake.

[¶34.] "In a bench trial, the circuit court is the finder of fact and sole judge of credibility." *Lindblom v. Sun Aviation, Inc.*, 2015 S.D. 20, ¶ 9, 862 N.W.2d 549, 552 (quoting *Osman v. Karlen & Assocs.*, 2008 S.D. 16, ¶ 30, 746 N.W.2d 437, 445).

> The credibility of the witnesses, the weight to be accorded their testimony, and the weight of the evidence must be determined by the circuit court and we give due regard to the circuit court's opportunity to observe the witnesses and the evidence. On review the successful party is entitled to the benefit of [their] version of the evidence and of all favorable inferences fairly deducible therefrom.

*Id.* (quoting *State v. Fifteen Impounded Cats*, 2010 S.D. 50, ¶ 26, 785 N.W.2d 272, 281-82).

[¶35.] The court carefully weighed all the testimony and concluded that the drain tile was not, in all likelihood, affecting the total water yield draining into Twin Lake. Therefore, giving due regard to the circuit court's observations of the evidence, we do not find clear error in the circuit court's findings.

> 2. ***Whether the County's assertion of jurisdiction over ADP 12-142 was infirm because of bias, self-interest, or inherent conflict of interest.***

[¶36.] DeSchepper also claims that the County's decision to approve ADP 12-142 was affected by bias, self-interest, or inherent conflicts of interest. He highlights a prior circuit court ruling determining that the County improperly

issued the first drainage permit to the McAreaveys without proper notice. He also points to the County's initial decision to deny the McAreaveys' after-the-fact request to approve expanded tiling and the later decision to approve this same tiling. He argues the County's desire to correct the procedural improprieties and motivation to avoid liability created the bias, self-interest, and conflicts of interest in considering ADP 12-142. The County argues that DeSchepper failed to preserve the issue before the circuit court and failed to present any evidence to overcome the presumption of regularity by the County.

[¶37.] DeSchepper acknowledged before the circuit court that he was not claiming fraud and had no evidence of improper motive by the County, but he argues to this Court that his claims of bias, self-interest, or conflicts of interest by the County were properly raised. DeSchepper made little mention of these claims during the trial. He did however present proposed findings of fact and conclusions of law on bias, self-interest, or conflicts of interest by the County, which the circuit court denied.

[¶38.] Assuming DeSchepper adequately preserved this issue before the circuit court, he failed to rebut the presumption that the County considered the permit applications fairly and without bias. "Decision makers 'are presumed to be objective and capable of judging controversies fairly on the basis of their own circumstances.'" *Armstrong v. Turner Cty. Bd. of Adjustment*, 2009 S.D. 81, ¶ 23, 772 N.W.2d 643, 651 (quoting *Northwestern Bell Tel. Co., Inc. v. Stofferahn*, 461 N.W.2d 129, 133 (S.D. 1990)). Starting with this presumption, the burden was upon DeSchepper to present some evidence of "actual bias", "unacceptable risk of actual

bias or prejudgment", or some other conflict of interest by the County. *Id.* DeSchepper failed to do so. DeSchepper did not call any of the individual commissioners to testify, admitted that he had no evidence of improper motive or purpose by any commissioner, and acknowledged that none of the individual commissioners stood to gain financially by approving the permits. Because DeSchepper failed to rebut the presumption that the County was able to objectively and fairly judge the permit applications, he has failed to show any error by the circuit court on this issue.

> **3.** **Whether the circuit court erred in granting summary judgment on DeSchepper's claim for damages after determining that expert testimony was necessary to show causation.**

[¶39.] DeSchepper argues that the circuit court erred by requiring expert testimony on the question of whether the drain tile system was a substantial factor in causing Twin Lake to flood his property. DeSchepper relies primarily on *Magner v. Brinkman* in support of his claim that expert testimony is unnecessary to prove legal causation for damages in a water drainage case. He points to this Court's conclusion in *Magner* that a "[p]laintiffs' [lay] testimony was sufficient to permit the jury to conclude Defendants caused the water invasion." 2016 S.D. 50, ¶ 16, 883 N.W.2d at 82. The McAreaveys and the County respond that the circuit court properly concluded that expert testimony was necessary to show causation because the subject matter was not within the common experience or knowledge of a lay person.

[¶40.] DeSchepper's argument suggests that *Magner* is a blanket statement that expert testimony is unnecessary to prove causation in a drainage case. On the

contrary, *Magner* determined, following a jury verdict in favor of the plaintiff, that the "[p]laintiffs' testimony was *sufficient*" to sustain the jury's verdict for damages based upon the facts in that case. *Id.* (emphasis added). In *Magner*, there was evidence of two specific, large rain events that caused flooding on plaintiffs' property after defendants altered the drainage on their property to cast water directly onto plaintiffs' property. One plaintiff testified to having visibly observed these alterations causing water to discharge in greater-than-normal volume onto the plaintiffs' property and flood the property during the large rain events. There was also evidence that before defendants altered the drainage, there was no flooding on plaintiffs' property during a similar, large rain event. *Id.* ¶ 15, 883 N.W.2d at 81-82.

[¶41.]     Here, there was no claim that the McAreaveys' drain tile was discharging directly onto DeSchepper's property. The tile was constructed entirely on the McAreaveys' land and discharged onto their property. Additionally, there was no testimony of any measurable or evident impact that the drain tile had on the amount of water draining into Twin Lake. Under these circumstances, the causation question consisted of whether the drain tile was a substantial factor in causing the 340-acre lake, located within the 979-acre watershed, to rise and to flood DeSchepper's property. The answer required the application of principles of hydrology and geology to the Twin Lake watershed. Such scientific principles are unquestionably outside the common experience and understanding of a lay person.

[¶42.]     "[T]his Court has repeatedly affirmed that 'expert testimony is required when the subject matter at issue does not fall within the common

experience and capability of a lay person to judge.'" *Wells v. Howe Heating & Plumbing, Inc.,* 2004 S.D. 37, ¶ 18, 677 N.W.2d 586, 592 (quoting *Goebel v. Warner Transp.,* 2000 S.D. 79, ¶ 32, 612 N.W.2d 18, 26). DeSchepper's expert, a geologist, was unable provide an opinion that the McAreaveys' drain tile was a substantial factor in causing the Twin Lake to rise and flood DeSchepper's property. The circuit court properly granted summary judgment on DeSchepper's claims for damages.

> 4. ***Whether the circuit court erred in granting summary judgment on McAreaveys' claims for injunctive relief and abatement of a nuisance.***

[¶43.]     Following trial, the McAreaveys renewed their motion for summary judgment on the remaining claims for injunctive relief and abatement of a nuisance. The circuit court orally granted summary judgment and entered an order dismissing the claims. The court reasoned that there was not a discernable difference between DeSchepper's claims for nuisance abatement and injunctive relief. The court therefore analyzed both claims as one for the purpose of considering the renewed motion for summary judgment. The circuit court relied on SDCL 21-10-2[5], determining that DeSchepper could no longer maintain a claim for nuisance or injunctive relief because the County's decisions approving the drain tile permits were affirmed. The circuit court also relied upon its findings that the evidence did not establish that the McAreaveys' drain tile caused Twin Lake to rise and flood DeSchepper's property.

---

5.     SDCL 21-10-2 provides that "[n]othing which is done or maintained under the express authority of a statute can be deemed a nuisance."

[¶44.]      DeSchepper continues to argue that the circuit court erred in applying the civil law rule to the McAreaveys' drain tile, but he makes no argument that there was any basis for injunctive relief or nuisance after the court determined that the drain tile was not a substantial factor in causing Twin Lake to rise and affirmed permits ADP 11-81 and ADP 12-142.  We conclude the circuit court properly granted summary judgment on DeSchepper's remaining claims.

[¶45.]      The decision of the circuit court is affirmed on all the issues.

[¶46.]      GILBERTSON, Chief Justice, and KERN, Justice, and PARDY, Circuit Court Judge, concur.

[¶47.]      PARDY, Circuit Court Judge, sitting for SALTER, Justice, disqualified.