#29395-r-SRJ
**2021 S.D. 40**

## IN THE SUPREME COURT
## OF THE
## STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| SMITH ANGUS RANCH, INC. (SAR), | Plaintiff and Appellee, |
| v. | |
| TRAVIS HURST, as an alleged Director of SAR, and as an Individual, | Defendant, Third-Party Plaintiff and Appellant, |
| v. | |
| CRAIG SMITH and LANCE SMITH, | Third-Party Defendants. |

\* \* \* \*

## APPEAL FROM THE CIRCUIT COURT OF
## THE FOURTH JUDICIAL CIRCUIT
## HARDING COUNTY, SOUTH DAKOTA

\* \* \* \*

## THE HONORABLE GORDON D. SWANSON
Retired Judge

\* \* \* \*

| | |
|---|---|
| MICHAEL K. SABERS TRAVIS B. JONES of Clayborne, Loos & Sabers, LLP Rapid City, South Dakota | Attorneys for plaintiff and appellee. |
| MATTHEW E. NAASZ DAVID LUST of Gunderson, Palmer, Nelson & Ashmore, LLP Rapid City, South Dakota | Attorneys for defendant, third-party plaintiff and appellant. |

\* \* \* \*

ARGUED
APRIL 27, 2021
OPINION FILED **07/14/21**

#29395

JENSEN, Chief Justice

[¶1.]     Smith Angus Ranch Inc. (SAR), a South Dakota corporation, brought an action alleging Travis Hurst (Travis) wrongfully acquired SAR assets and made improper purchases using SAR funds while serving as a director and officer of SAR. The complaint alleged breach of fiduciary duty and self-dealing, among other claims. The court granted SAR's motion for partial summary judgment on the claims for breach of fiduciary duty and self-dealing, after prohibiting Travis from presenting extrinsic oral evidence to show he was authorized to carry out the contested transactions. We granted Travis' petition for an intermediate appeal of the circuit court's ruling. We now reverse and remand.

**Facts and Procedural History**

[¶2.]     Calvin and Dee Smith operated a family ranch in Jones County. They had three children: Lance, Craig, and Julie. Beginning in 1994, Julie and her husband Travis (the Hursts) began working with Calvin and Dee on the Jones County ranch. They did not receive a salary for their labor. In 2000, Calvin and Dee sold their Jones County ranch and bought a ranch in Harding County. The Hursts also relocated their family to Harding County to work on the ranch with Calvin and Dee. Lance and Craig had left the family ranching business prior to Calvin and Dee's purchase of the Harding County ranch.

[¶3.]     Calvin and Dee incorporated the Harding County ranching operation as SAR and were SAR's initial shareholders, officers, and directors. Travis was added as a signatory on SAR's checking account at the time of incorporation and

-1-

made purchases on the account over the years. When Calvin died in 2008, Dee became the sole shareholder, director, and officer of SAR.

[¶4.] In 2013, Dee began treatment for cancer, which reduced her time at the ranch. She filed an Amended Annual Report with the South Dakota Secretary of State adding Travis as a director and vice president of SAR. Travis testified that Dee made these changes so he could sell SAR cattle at local sale barns, but the amendment did not alter "the operation of the ranch . . . in any meaningful way." Travis claimed he continued to write checks drawn on SAR's "checking account as needed, and as directed by Dee, to make ranch related purchases" just as he had before he became a director and officer.

[¶5.] While serving as a director and officer, Travis wrote checks on SAR's account to purchase a vehicle for his son, a vehicle for himself, fencing supplies for land he owned, and other supplies associated with raising livestock that he owned personally. Travis claimed that Dee orally authorized each of these transactions. Travis also presented the depositions of Lance and Craig, in which they admitted that Dee had purchased vehicles for their children.

[¶6.] In 2015, Dee began transferring both personal assets and SAR assets to the Hursts. She sold 6,000 acres of ranch land, which she owned individually, to the Hursts via a contract for deed. Dee also transferred SAR vehicles to Travis. After purchasing the ranch land, Travis claimed that, "under Dee's direction," he and Julie assumed ownership of half of the 2015 SAR calf crop and branded them with their personal brand. Travis claimed Dee had agreed to pay him and Julie the calves as rent for allowing SAR livestock to graze on the ranch land that Dee had

recently sold to them.  Travis claimed that Dee also gifted them the other half of the 2015 calf crop and instructed them to place their brand on the calves.

[¶7.]      Dee executed a will on April 3, 2015, in which she forgave all outstanding principal and interest payments that the Hursts owed for the ranch land at the time of her death.  The will stated: "I am aware that my sons may not be happy with the provisions I have made . . . .  [H]owever I ask them to honor my wishes . . . ."  The will bequeathed her shares in SAR to Lance and Craig.  In May 2015, Dee wrote separate $100,000 checks to Lance and Craig that stated "inheritance" or "inheritance share" on the memo line.  Dee suffered a stroke several months later and moved to a nursing home.  She resided there for a week until she passed away on October 24, 2015.

[¶8.]      SAR was dissolved in September 2016.  On September 4, 2018, Lance and Craig caused SAR to file a complaint against Travis, which alleged breach of fiduciary duty, self-dealing, usurpation of corporate opportunity, fraud, and conversion.  SAR's corporate documents are not available, but the parties agreed that these documents did not grant Travis the explicit authority to self-deal.

[¶9.]      On July 21, 2020, SAR moved for partial summary judgment on the counts for breach of fiduciary duty and self-dealing.  SAR argued that Travis engaged in self-dealing by taking ownership of SAR cattle and by using SAR funds to purchase vehicles, fencing, and livestock supplies for himself and his family.  SAR argued "[t]hat no written authorization existed to justify self-dealing and Defendant Director[ Travis'] attempt to utilize 'oral' authorization [from Dee] fails as a matter of law."  In support, SAR cited *Estate of Stoebner v. Huether*, in which

this Court applied "a bright-line rule that no oral extrinsic evidence may be introduced to raise a factual issue as to whether an attorney-in-fact was authorized to self-deal under a power of attorney." 2019 S.D. 58, ¶ 23, 935 N.W.2d 262, 268. SAR argued the bright-line rule applies to all fiduciaries, including a corporate director or officer. As such, SAR claimed that Travis could not testify Dee authorized the transactions at issue.

[¶10.]       Travis argued that he did not breach his fiduciary duties to SAR because Dee "was singularly in charge of corporate . . . decisions" and she instructed him to carry out each transaction. He argued that the *Stoebner* rule is limited to the fiduciary obligations of an attorney-in-fact arising from a power of attorney (POA). Further, he claimed that his testimony was relevant and generated a genuine issue of material fact concerning whether he breached his fiduciary duties under South Dakota's corporate statutes.

[¶11.]       The circuit court granted SAR's motion for partial summary judgment on the claims for breach of fiduciary duty and self-dealing. The court recognized that Travis' testimony and other evidence may support his claim that Dee authorized the activity at issue. However, the court extended and applied the bright-line rule from *Stoebner* to corporate directors and officers, holding Travis' testimony that Dee had authorized the transactions was inadmissible. After excluding Travis' testimony, the court held it was undisputed that Travis used SAR assets to obtain items for his personal benefit.

[¶12.]       Travis petitioned for intermediate appeal, which this Court granted. He claims the circuit court erred by applying the rule in *Stoebner* to exclude

extrinsic oral evidence that the transactions were authorized or approved and thereby erred in granting SAR's motion for partial summary judgment.

## Analysis and Decision

[¶13.] "We review a circuit court's entry of summary judgment under the de novo standard of review." *Stoebner*, 2019 S.D. 58, ¶ 16, 935 N.W.2d at 266. Under de novo review, "[w]e give no deference to the circuit court's decision[.] Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied." *Id.* (alteration in original) (citations omitted).

[¶14.] "The existence and scope of a fiduciary duty are questions of law. Whether a breach of a fiduciary duty occurred, however, is a question of fact." *Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 37, 652 N.W.2d 756, 772. "South Dakota law reflects the traditional view that fiduciary duties are not inherent in normal arm's-length business relationships, and arise only when one undertakes to act primarily for another's benefit." *Dinsmore v. Piper Jaffray, Inc.*, 1999 S.D. 56, ¶ 20, 593 N.W.2d 41, 47. Corporate officers are fiduciaries. *See* SDCL 55-7-2(2).

[¶15.] Travis was an officer and director of SAR when he engaged in alleged acts of self-dealing, and Travis does not contest SAR's claim that he was acting as a corporate fiduciary when he engaged in these transactions. Further, Travis worked with Dee on closely-held family ranches for over two decades prior to this litigation and regularly made purchases on SAR's behalf since its incorporation. Travis also conceded that his activities on behalf of SAR increased after Calvin's death in 2008 and Dee's cancer diagnosis in 2013. Therefore, for the purpose of considering the

summary judgment motion, we conclude that Travis was acting in a fiduciary capacity when the activity at issue occurred.

[¶16.] As a general rule, a fiduciary may not engage in self-dealing. *See In re Estate of Stevenson*, 2000 S.D. 24, ¶ 11, 605 N.W.2d 818, 821 (discussing trustees). "[F]iduciar[ies] must act with utmost good faith and avoid any act of self-dealing that places [their] personal interest in conflict with [their] obligations to the beneficiaries." *Id.* ¶ 9. However, in certain cases, "our statutes set forth specific exceptions to this general rule." *Id.* ¶ 11. *See, e.g.*, SDCL 55-2-3 (governing trustees); SDCL 47-1A-861.1 (governing corporate officers).

[¶17.] We have "held that a power of attorney must be strictly construed . . . ." *Bienash v. Moller*, 2006 S.D. 78, ¶ 13, 721 N.W.2d 431, 435. Relying on the general prohibition against self-dealing and our rule that POAs must be strictly constructed, this Court has held that "if the power to self-deal is not specifically articulated in the power of attorney, that power does not exist." *Id.* ¶ 14. "As a corollary to this [] rule," in *Bienash* we "adopt[ed] a bright-line rule that no *oral* extrinsic evidence will be admitted to raise a factual issue" concerning a principal's intent to allow self-dealing by an attorney-in-fact. *Id.* ¶¶ 23-24.

[¶18.] In adopting this rule, the Court considered the decisions of other states holding POAs must be strictly construed, and which have barred extrinsic evidence of a principal's intent to allow self-dealing. *Id.* ¶¶ 18-23. The Court noted the policy rationale for excluding extrinsic evidence of a principal's intent in attorney-in-fact relationships:

> When one considers the manifold opportunities and temptations for self-dealing that are opened up for persons holding general

> powers of attorney—of which outright transfers for less than value to the attorney-in-fact [himself or] herself are the most obvious—the justification for such a flat rule is apparent. And its justification is made even more apparent when one considers the ease with which such a rule can be accommodated by principals and their draftsmen.

*Id.* ¶ 21 (quoting *Kunewa v. Joshua*, 924 P.2d 559, 565 (Haw. Ct. App. 1996) (alteration in original)). This Court applied the bright-line rule barring oral extrinsic evidence again in *Studt v. Black Hills Fed. Credit Union*, 2015 S.D. 33, ¶ 14, 864 N.W.2d 513, 517. Most recently, we affirmed the rule in *Stoebner* stating, "[w]e have adopted a bright-line rule that no oral extrinsic evidence may be introduced to raise a factual issue as to whether an *attorney-in-fact was authorized to self-deal under a power of attorney*." 2019 S.D. 58, ¶ 23, 935 N.W.2d at 268 (emphasis added).

[¶19.] In extending this bright-line rule to corporate fiduciaries, the circuit court relied on language from *Stoebner* stating, "a written document must clearly articulate that the fiduciary is authorized to engage in self-dealing." *Id.* Although *Stoebner* involved a POA, the circuit court read *Stoebner* broadly to also prohibit a corporate officer or director from presenting extrinsic oral evidence concerning a principal's intent in the absence of writing that expressly granted the power to self-deal.

[¶20.] Initially, Travis argues that the court erred by applying the bright-line rule from *Bienash* and *Stoebner* when SAR's corporate documents are unavailable, claiming that the rule is inapplicable because there are no written documents that set out his fiduciary duties. Travis also argues the bright-line rule is limited to agents acting under a written POA. Thus, he claims the circuit court erred by

"anticipat[ing] this Court would, for the first time, extend the bright-line rule applying to agents acting pursuant to powers of attorney to other fiduciaries." In support, Travis cites *Hein v. Zoss*, in which this Court held the circuit court abused its discretion by barring the admission of extrinsic evidence relevant to whether an attorney-in-fact "acted with utmost good faith and for the benefit of [the principal]" before a POA was executed. 2016 S.D. 73, ¶ 13, 887 N.W.2d 62, 67. Finally, Travis claims that, unlike the common law fiduciary duties of an attorney-in-fact, the South Dakota Business Corporation Act codified the duties owed by a corporate fiduciary. *See* SDCL 47-1A-830 to -831 (providing duties owed by directors); SDCL 47-1A-840 to -842.2 (providing duties owed by officers).

[¶21.] SAR disputes Travis' claim that South Dakota's corporate statutes have any impact on the application of the bright-line rule to corporate fiduciaries. SAR argues that the circuit court properly applied the rule from *Bienash* and *Stoebner* to prohibit Travis' testimony concerning Dee's alleged oral authorization. Further, SAR argues that if the bright-line rule is not extended to other fiduciary relationships, it "would open a pandora's box of excuses in self-dealing and/or conversion cases that could never be closed." Alternatively, SAR claims that "the record as it was presented to the [c]ircuit [c]ourt," including "[Travis'] own self-serving unsupported [testimony,]" was insufficient to generate a genuine issue of material fact.*

---

\* The circuit court excluded Travis' testimony concerning Dee's oral authorization based on *Bienash* and *Stoebner*. We decline to consider SAR's argument that Travis' testimony is inadmissible hearsay, as this objection was not raised before, or considered by, the circuit court.

[¶22.]    Our cases, including our most recent decision in *Stoebner*, have only applied the rule from *Bienash* to acts of self-dealing by an attorney-in-fact acting under a written POA. We have not extended this rule to other fiduciaries, and SAR does not present authority from any jurisdiction that has extended the rule to other fiduciary relationships. Limiting the rule to acts of self-dealing by POAs is consistent with the recognition of this Court, and other courts, that the rule arises from the acute vulnerability of POAs to self-dealing. *See Bienash*, 2006 S.D. 78, ¶ 21, 721 N.W.2d at 436. *See also Estate of Casey v. Comm'r of Internal Revenue*, 948 F.2d 895, 898 (4th Cir. 1991) (stating the bright-line rule concerning POAs had been adopted "in order to avoid fraud and abuse").

[¶23.]    Further, the Legislature has codified the duties and liabilities of corporate officers and directors through the South Dakota Business Corporation Act in SDCL chapter 47-1A. The Legislature does not require that a corporate fiduciary obtain written authorization to avoid liability for self-dealing. Thus, our decision to decline extending the bright-line rule from *Bienash* and *Stoebner* to corporate fiduciaries is consistent with South Dakota's statutory framework.

[¶24.]    Having determined that the circuit court erred by excluding extrinsic oral evidence in this case, we conclude that questions of fact exist precluding summary judgment. "Summary judgment may be granted only where there is no genuine issue of material fact." *Erickson v. Lavielle*, 368 N.W.2d 624, 626 (S.D. 1985). "The moving party has the burden of clearly demonstrating an absence of any genuine issue of material fact and an entitlement to judgment as a matter of law." *Johnson v. Matthew J. Batchelder Co.*, 2010 S.D. 23, ¶ 8, 779 N.W.2d 690,

693.  "We view all evidence and favorable inferences from that evidence in a light most favorable to the nonmoving party." *Id.*

[¶25.]      Travis presented testimony that Dee authorized each one of the transactions at issue.  Further, as the circuit court correctly observed, "there may be evidence," apart from Travis' testimony, "tending to support Travis'[] contention that Dee not only approved of, but directed Travis to convert assets of SAR to his personal use."  Travis was never paid a salary for his work for SAR, but Dee transferred ownership of SAR vehicles to Travis, transferred ownership of ranch land to the Hursts, and then forgave the Hursts' debt on the ranch land in her will.  In her will, Dee also acknowledged that her favorable testamentary intent toward the Hursts may upset her sons.

[¶26.]      The existence of disputed facts in the record requires that we reverse the circuit court's decision granting partial summary judgment and remand for further proceedings.

[¶27.]      KERN, SALTER, DEVANEY, and MYREN, Justices, concur.