#29599, #29600-a-PJD
**2022 S.D. 26**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STEVEN D. McLAEN AND
MATTHEW McLAEN,                                           Appellants,

　　　v.

WHITE TOWNSHIP, a public
corporation in Marshall County,
South Dakota; DuWAYNE BOSSE,
DOUG CHAPIN, and BRYAN
HAWKINSON, in their capacities as
members of the White Township
Board of Supervisors,                                        Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
MARSHALL COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RICHARD A. SOMMERS
Judge

* * * *

ALEX T. MASTELLAR
JAYNE E. ESCH of
Rinke Noonan, LTD
St. Cloud, Minnesota                                     Attorneys for appellants.


ZACHARY W. PETERSON
JOSHUA K. FINER of
Richardson, Wyly, Wise
　　Sauck & Hieb, LLP
Aberdeen, South Dakota                                  Attorneys for appellees.

* * * *

CONSIDERED ON BRIEFS
OCTOBER 4, 2021
OPINION FILED **05/11/22**

#29599 #29600

DEVANEY, Justice

[¶1.]	Steven and Matthew McLaen obtained a drainage permit from the Marshall County Drainage Board. Thereafter, they sought approval of their project from the White Township Board of Supervisors because their drainage project could impact roads or rights-of-way in the Township. Ultimately, the Township denied the McLaens' request, and the McLaens filed an administrative appeal and a separate declaratory action, both of which challenged the Township's authority to regulate their drainage project and the merits of the Township's decision. The circuit court issued one memorandum decision addressing both actions and upholding the Township's decision. The McLaens filed a separate appeal in each action, asserting multiple issues related to the Township's denial of their requested project. We consolidate the appeals and affirm.

**Factual and Procedural Background**

[¶2.]	Steven McLaen owns agricultural property in White Township within Marshall County, South Dakota. He farms the property with his son Matthew McLaen. In 2014, the McLaens requested a drainage permit from the Marshall County Drainage Board for a drainage project in portions of Sections 16, 22, and 23 within White Township. The permit application is not in the record, but Steven related in an affidavit that the project would drain into a portion of the right-of-way along 103rd Street, a Township road, and would require the installation of culverts under the Township's roads. The County granted the permit "contingent on the applicant acquiring signed approval from the township for the drainage to run through a township ditch."

-1-

[¶3.]　　　According to Steven, the standard practice in White Township when seeking approval for engaging in drainage projects that involve road crossings, draining in ditches, and lift stations, was to have an in-person or telephone conversation with a supervisor on the White Township Board of Supervisors. Steven claimed that he followed this practice in 2015 and discussed the drainage project with David Seibel, who at the time was a supervisor on the board. In an affidavit, Steven alleged that Seibel gave him verbal permission to make road crossings and install culverts as part of the drainage project. In an affidavit, Seibel confirmed that he had this 2015 discussion with Steven. Seibel further indicated he "had no problem with the drainage project and informed [Steven] of that." Seibel also related that he mentioned the McLaens' drainage project to the Township Board of Supervisors at its March 2016 annual meeting and that he did "not recall any opposition or other discussion."

[¶4.]　　　From 2015 to July 2019, the McLaens performed some work on the drainage project. However, it is not clear from the record exactly what work has been done. It is undisputed that the McLaens experienced delays on the project due to their attempt to obtain a certified wetlands determination to ensure their project would not impact wetlands, and they did not begin the drain tile and lift station portions of the project until late July 2019. Steven claimed that when they began these portions of the project, the Marshall County drainage administrator informed him that the Township was concerned about what the McLaens were doing. The McLaens ceased work on their project, and on August 2, 2019, Matthew attended a meeting with the Township Board to discuss the intended project. He informed the

supervisors that both the County and the Township had previously approved the project. Then, using a large Township map, Matthew explained how the proposed project would drain water into a Township right-of-way and where culverts would be installed under Township roads.

[¶5.]      Seibel was no longer a supervisor on the Township Board because he was replaced by DuWayne Bosse after the 2016 annual meeting. None of the current supervisors (Bosse, Douglas Chapin, and Bryan Hawkinson) recalled approving the McLaens' project in the past and informed Matthew of their concern that it had not in fact been approved by the Township. They asked Matthew to provide the documents reflecting the project's approval. Around August 7, Steven provided the supervisors certain documents related to the project; however, those documents are not in the record. The supervisors testified in their depositions that the documents included the McLaens' application to Marshall County for a drainage permit, an estimate for the project, a site map of the tiling grid, some letters, and waivers from landowners.

[¶6.]      The supervisors met again to discuss the McLaens' project at a special meeting on August 17, 2019, at Bosse's place of business, Bolt Marketing. Twenty-four hours prior to the meeting, Bosse posted notice of the meeting on the front door of Bolt Marketing. Bosse could not recall telling the McLaens about the August 17 meeting, and it is undisputed that the McLaens did not have knowledge of the meeting prior to it occurring.

[¶7.]      Bosse testified that during the meeting, the supervisors discussed the project as proposed by the McLaens. Bosse and Chapin testified that they were

under the impression from Matthew that the McLaens' project involved manipulating the ditch on the south side of 103rd Street such that the depth of the ditch would be deeper. This concerned Bosse because it "would cause a larger slope to the ditch and [could] possibly [be] harmful for a car, if a car would drive in it." Bosse was also concerned that the McLaens' proposal would change the natural flow of the water in the ditch and that there was not, in his view, a guarantee that the water would flow all the way to Wild Rice Creek. He explained that based on his experience it would hurt the roadbed to have water sitting in the right-of-way because when water sits next to a road, it could permeate through and cause the road to become soft. Chapin and Hawkinson testified in their depositions to having similar concerns.

[¶8.] The August 17 meeting minutes reflect that the supervisors passed a motion "to allow the drainage proposal" under six conditions, as follows:

1. A solid pipe would be used to run water from section 16 all the way to the Wild Rice Crick [sic] in section 23. The pipe would run on the south side of the road along 103rd St.
2. No manipulation will be done in any township right-of-way to allow surface drainage.
3. *New* easements/waivers will need to be obtained from landowners on the north side of section 22.
4. Due to past approval expiration several years ago, the entire drainage project needs to be reapproved by the Marshall county drainage board.
5. If any township roads are cut/dug to lay a pipe underground, Matt McLaen will be responsible for any and all repairs at the specific spot of the cut for the next 5 years.
6. We would strongly suggest Matt get approval from the Wild Rice Watershed board.

[¶9.]        Bosse testified that a day or two after the August 17 meeting, he gave Matthew the meeting minutes when Matthew stopped by his office. Bosse further testified that a copy of the minutes was given to the Marshall County Drainage Board. He also claimed that he had two or three phone calls with Steven to discuss the project and the Township's conditions. According to Bosse, during these conversations, Steven did not agree with having to install a pipe in the right-of-way and threatened to file a lawsuit against the Township.

[¶10.]        On September 21, 2019, the Township Board held a special meeting at which they passed a motion to hire an attorney to represent the Township in any legal actions brought by the McLaens. Similar to the August 17, 2019 meeting, the Township posted notice of this meeting 24 hours prior to it occurring by attaching a paper notice on the door of Bolt Marketing. The McLaens were unaware of the Township meeting. The minutes of the meeting reflect that the Township voted to hire Attorney Jay Leibel. The supervisors met again on September 23, 2019, and immediately went into executive session to discuss the lawsuit the McLaens were threatening to bring. The minutes reflect that the supervisors discussed their concerns about the McLaens' project but no official action was taken at that meeting.

[¶11.]        Although the McLaens had a permit for the drainage project from Marshall County, they sought reapproval of that permit from the County, consistent with one of the conditions set by the Township. Their request was considered at the September 24, 2019 Marshall County Drainage Board meeting. The Township supervisors, Attorney Leibel, Steven and Matthew McLaen, and the McLaens'

attorney attended this meeting. The meeting minutes reflect that the County Drainage Board considered a report by a County administrative official about the drainage project along with a letter from one of the McLaens' neighbors disapproving of the project. Neither the report nor the letter is in the record, and there is no transcript of the County Drainage Board meeting.

[¶12.] The meeting minutes reflect that during the meeting, counsel for both the Township and the McLaens spoke about the project. At one point, counsel for the Township indicated "that the township isn't necessarily against the drainage but would like to verify the natural drainage via topographical maps that [were] requested[.]" Counsel "asked for a continuance until those can be obtained and reviewed." Thereafter, Bosse expressed concern that the McLaens' project would block or remove culverts in Township roads. A County Drainage Board member indicated that the McLaens and the Township "would have to work together to reach an agreement" because "[t]hat is separate from County approval as the County does not have authority over Township roads." Ultimately, the meeting minutes reflect that the County voted to approve a modification to the permit issued by the Board in 2014, namely that the 2014 permit be reapproved contingent on the McLaens "following all applicable laws."

[¶13.] After the County Drainage Board meeting, Steven requested a meeting with the Township Board to, as he claimed, "address any concerns and to coordinate the road crossings as identified in the drainage permit." He called and personally texted the supervisors. However, no meeting was held. Steven related that on November 1, 2019, he sent a certified letter to each Township supervisor requesting

a formal meeting to discuss the project. The letter is not in the record; however, the supervisors confirmed in their deposition testimony that they received a certified letter from Steven.

[¶14.]    On November 25, 2019, the Township Board held a special meeting and immediately moved to go into executive session to discuss the legal matter involving the McLaens. Notice of the meeting was posted 24 hours prior on the door of Bolt Marketing. The McLaens were not aware of the meeting. According to Bosse, the supervisors decided at the meeting to have Attorney Leibel send a letter to the McLaens' attorney relating the Township's reasons for denying the McLaens' proposal.

[¶15.]    Attorney Leibel drafted the letter, and after the Township supervisors approved its content, he mailed it to counsel for the McLaens. The letter is dated January 31, 2020, and Steven received the letter on February 3, 2020. The letter informed the McLaens that the Township Board of Supervisors met on November 25 and directed the attorney to issue a letter "reiterating the township is not going to authorize [the McLaens] to use a pump to discharge water into the right-of-way primarily along 103rd Street from real property located in the east corner of the Southwest Quarter of Section 16, White Township, nor is the township authorizing any new culverts or cuts in any White Township roads at this time." The letter further stated that the primary reason for the denial was because the McLaens' proposal would change the natural flow of the water. However, the letter indicated that "the Township would consider authorization of a pipeline in the right-of-way of 103rd Street under the following conditions":

1.  Only a pipe is used to convey the water.
2.  The slope of the ditch is not altered.
3.  The township would still be able to do any maintenance required.
4.  All affected landowners must agree in writing to the installation of the pipe whether above or below ground.
5.  You and your successors in interest be responsible for the maintenance and operation of pipe. You agree to hold harmless and indemnify the township of any and all damages caused by operation of the pump and use of the pipeline.

[¶16.] According to Steven, receipt of this letter "was the first time [he] was informed that White Township had a meeting and had 'denied' [the] already-installed drainage project." On February 19, 2020, the McLaens filed an administrative appeal under SDCL 8-5-8 challenging the Township Board's decision denying authorization of their project. On the same day, they also filed a separate declaratory judgment action seeking an order declaring that they did not need White Township's permission to drain water along the Township road right-of-way or to cross Township roads as proposed in their Marshall County drainage permit.

[¶17.] The Township filed a motion to dismiss the administrative appeal as untimely. SDCL 8-5-8 requires that persons aggrieved by a township's decision serve written notice of appeal within 20 days after the decision is published or after receiving actual notice. The Township alleged that it had made its decision denying the McLaens' request at its August 17, 2019 meeting and that the McLaens had actual notice of the decision, at the very latest, on September 24, 2019, because that decision was discussed at the Marshall County Drainage Board meeting. In response, the McLaens claimed that they were not appealing the Township's alleged decision on August 17, 2019; rather, they were appealing the decision made by the

Township on November 25, 2019 and received by the McLaens on February 3, 2020. They further asserted that even if the Township's August 17 minutes constituted a decision, the Township did not inform the McLaens of this decision at the September 24 County Drainage Board meeting. The circuit court denied the motion to dismiss after accepting as true all facts as pled by the McLaens in their notice of appeal. The court concluded that the Township made its decision on November 25, 2019, and that the McLaens timely appealed that decision within 20 days of receiving notice on February 3, 2020.

[¶18.] After conducting discovery, the McLaens filed identical motions for summary judgment in the administrative appeal and declaratory judgment actions. They asserted that "[t]he material facts surrounding White Township's decision and the actions of the parties are not in dispute." They requested that the court determine that the Township was without authority to make the decision as expressed in Attorney Leibel's January 31, 2020 letter. As it pertains to the administrative appeal, the McLaens asserted that de novo review applies; however, they alternatively claimed that even if the Township's decision was reviewed for an abuse of discretion, the decision was arbitrary and capricious because it was not made based on any fixed rules or standards. The McLaens further asserted that the Township's denial of their project was "without effect" because the Township had previously approved the project in 2015 after the McLaens followed the standard practice in the Township of obtaining approval from a supervisor. Finally, they claimed that the Township should be estopped from rescinding its prior approval

because, in their view, they reasonably relied on the 2015 approval to their detriment.

[¶19.]     The Township filed separate cross-motions for summary judgment in each file and responses to the McLaens' motion. In the administrative appeal, the Township re-alleged its claim that the McLaens' appeal was untimely. It directed the circuit court to new record evidence evincing that the McLaens had actual notice of the Township's August 17, 2019 decision as early as a couple days after the August 17 meeting and as late as the County Drainage Board meeting on September 24, 2019. Alternatively, the Township alleged that if the appeal was deemed timely, summary judgment was nevertheless proper because the Township "considered several appropriate factors in determining that the McLaens' proposal was unacceptable and articulated the reasons for its concerns." Finally, the Township disagreed that it previously gave the McLaens permission via Steven's discussion of the project with Seibel in 2015 and, thus, claimed estoppel did not apply.

[¶20.]     The circuit court held one hearing on the motions and thereafter issued one memorandum decision dismissing both the administrative appeal and declaratory judgment action. The court concluded that the Township did not previously approve the project via Seibel's conversation with Steven. It also concluded that the McLaens' appeal of the Township's decision was untimely because the Township had made the decision to deny the project on August 17 and the McLaens had notice of the denial in September 2019. Alternatively, the circuit court determined that "the record does not contain anything that would indicate to

[the court] that the township is being arbitrary in not going along with this project." The court granted the Township's motions for summary judgment and denied the McLaens'. The circuit court issued a separate order in each action incorporating its memorandum decision.

[¶21.] The McLaens assert multiple overlapping issues in their separate appeals. The issues are restated as follows.

> 1. Whether the McLaens' appeal is timely.
>
> 2. Whether the Township can prospectively regulate the McLaens' project.
>
> 3. Whether estoppel applies.
>
> 4. Whether the circuit court erred in granting summary judgment upholding the Township's decision.

### Analysis and Decision

#### 1. *Whether the McLaens' appeal is timely.*

[¶22.] The McLaens contend that the circuit court erred in concluding that the Township made its decision on August 17, 2019, and further erred in concluding that they had notice of the decision in September 2019. The McLaens note that rather than denying their proposed project, the August 17, 2019 minutes state that the Township would approve their proposed project upon certain conditions— conditions that were then forwarded to the Marshall County Drainage Board for consideration in determining whether to reapprove the McLaens' drainage permit. The McLaens maintain that Attorney Leibel's January 31, 2020 letter constitutes the first formal denial of their proposal to the Township. They also assert that the August 17, 2019 meeting minutes cannot be the decision from which they were

required to appeal because the McLaens specifically appealed the January 2020 letter, not the August 2019 meeting minutes, and the conditions stated in the meeting minutes are different than those in Attorney Leibel's January 31, 2020 letter.

[¶23.]    In response, the Township asserts that the McLaens had actual notice in August 2019 of the denial of their proposal to insert culverts into Township roads and drain water into a Township road ditch. The Township directs this Court to Bosse's deposition testimony wherein he stated that he informed the McLaens of the Township's decision shortly after the August 2, 2019 meeting with Matthew. The Township alternatively asserts that the McLaens had notice of the Township's August 17, 2019 decision at the County Drainage Board meeting on September 24, 2019. Finally, it asserts that although the conditions in the January 31, 2020 letter differ from those in the August 17, 2019 meeting minutes, the letter does not reflect a new decision from which the McLaens can appeal because it is clear that the Township had made its decision to deny the McLaens' project, as proposed, on August 17.

[¶24.]    "In administrative appeals, a circuit court's appellate jurisdiction depends on compliance with statutory conditions precedent. A failure to comply with such conditions precedent deprives the circuit court of appellate jurisdiction." *AEG Processing Ctr. No. 58, Inc. v. S.D. Dep't of Revenue and Regul.*, 2013 S.D. 75, ¶ 8, 838 N.W.2d 843, 847 (internal citation omitted). SDCL 8-5-8 provides that an aggrieved person is "allowed an appeal" from "all decisions, orders, and resolutions of the boards of supervisors of townships," so long as notice of appeal is "taken

within twenty days after the publication of the decision, order, or resolution of the board" or "in those cases where there is no publication, *then within twenty days from the time of receiving actual notice* thereof[.]"[1]  (Emphasis added.)  We review de novo whether the circuit court had appellate jurisdiction to consider the McLaens' challenge to the Township's decision.  *See Hyde v. Sully Cnty. Bd. of Adjustment*, 2016 S.D. 65, ¶ 5, 886 N.W.2d 355, 357.

[¶25.]         While the Township maintains that it had made its decision related to the McLaens' project at the August 17 meeting, the minutes from the September 24, 2019 Marshall County Drainage Board meeting reflect that the McLaens' proposal to the Township was still a matter up for negotiation.  At one point in the meeting, Attorney Leibel indicated that the Township was not against the McLaens' drainage project, and he suggested a continuance to consider additional topographical information that had been requested.  Also during the meeting, a County drainage board member indicated that the Township and the McLaens "would have to work together to reach an agreement."  Then following the County Drainage Board meeting, Steven reached out to the supervisors to discuss the Township's concerns

---

1.     The timeframe within which an administrative appeal must be brought would also apply to McLaens' declaratory judgment action.  In *City of Aberdeen v. Rich*, this Court looked at the underlying cause of action and the relief sought to determine the applicable limitation period for bringing a declaratory judgment action challenging land transactions.  2001 S.D. 55, 625 N.W.2d 582.  Because, here, the McLaens' declaratory judgment action seeks to undo the Township's decision, SDCL 8-5-8 provides the relevant statute of limitations.  *See* 26 CJS Declaratory Judgments § 120 (providing that "[g]enerally, the period of limitation applicable to the underlying action at law or suit in equity should be applied to an action for declaratory relief").

and the McLaens' project. Although no meeting was held, one supervisor's communication with Steven suggested that a meeting might occur.

[¶26.] Notably, the supervisors testified in their depositions that rather than indicate to Steven that the Township had made its decision, leaving nothing left to discuss, they instead ignored his requests for a meeting. The record also indicates that the supervisors exchanged multiple text messages with Steven related to the McLaens' project after the September 24 County Drainage Board meeting. The text messages are not in the record, but each of the supervisors testified about the contents of the messages during their deposition testimony, and these messages suggested, particularly to Steven, that approval of the McLaens' project by the Township after the County Drainage Board meeting was an open issue.

[¶27.] It is also relevant to consider the informal manner in which the Township made its decision here. The Township Board has no set procedures for persons to have matters related to Township roads considered by the Board. Rather, the record reveals that persons can approach any supervisor and request a meeting to discuss an issue, and, as explained by Bosse, the supervisors will schedule the meeting at a time that works for the person requesting consideration of the matter. It also appears that for special meetings, the supervisors only provide notice of the meeting by posting a piece of paper 24 hours prior to the meeting on the door of the building in which they plan to meet. And, here, the

supervisors did not inform the McLaens of these special meetings even though they concerned the McLaens' project.[2]

[¶28.]     The circuit court erred in determining that the McLaens' appeal was untimely. The record indicates that the Township's final action denying the McLaens' proposed project occurred on November 25, 2019, when the Township met and decided to have Attorney Leibel send a letter to counsel for McLaens stating the Township's position. The McLaens received notice of this decision on February 3, 2020, and then timely served notice of their appeal within 20 days.

### 2.     Whether the Township can prospectively regulate the McLaens' project.

[¶29.]     The McLaens rely upon the language in SDCL 46A-10A-70 and -71 referring to "official controls" in arguing that because "White Township has not adopted any official controls for installing drainage along, within, or across its roads[,]" "the Township does not have prospective authority to limit aspects of the McLaens' drainage project involving road crossing[s]." In response, the Township contends that the McLaens are misconstruing these statutes because they relate to "official controls" adopted pursuant to SDCL chapter 46A-10A, the chapter governing county drainage, and Townships do not regulate drainage in South Dakota. It further contends that SDCL 46A-10A-70 codifies the "civil law rule" requiring the consent of the board charged with supervisory authority over a public

---

2.     The McLaens do not specifically challenge the Township's failure to properly notice the August 17, 2019 meeting or any other Township meetings related to their request. However, they reference the lack of proper notice by the Township to support their argument that the Township's decision was arbitrary and capricious; therefore, this argument is addressed under that issue.

highway in order to drain water to such highway, and therefore, in the Township's

view, it has authority to deny the McLaens' request to install culverts under

Township roads and drain to a Township right-of-way.

[¶30.]    "Statutory interpretation presents a question of law reviewable de

novo." *Zoss v. Schaefers*, 1999 S.D. 105, ¶ 6, 598 N.W.2d 550, 552 (citation omitted).

Under SDCL 46A-10A-70,

> *Subject to any official controls pursuant to this chapter* and chapter 46A-11, owners of land may drain the land in the general course of natural drainage by constructing open or covered drains and discharging the water into any natural watercourse, into any established watercourse, or into any natural depression whereby the water will be carried into a natural watercourse, into an established watercourse, or into a drain on a public highway, conditioned on consent of the board having supervision of the highway.

(Emphasis added.)  SDCL 46A-10A-71 provides that "[s]ubject to any official

controls pursuant to this chapter and chapter 46A-11, drains may be laid along,

within the limits of, or across any public highway."  An "official control" is defined

as "any ordinance, order, regulation, map, or procedure adopted by a board *to*

*regulate drainage*[.]"  SDCL 46A-10A-1(16) (emphasis added).

[¶31.]    It is undisputed that counties, not townships, regulate drainage.

Therefore, it is questionable whether these statutes apply to a review of a

township's decision to approve or deny a drainage project involving township

roadways.  Even if the statutes apply to such decisions, nothing in SDCL 46A-10A-

70 and -71 restricts a township's authority to regulate the aspects of a project that

could impact its roads and rights-of-way.  Rather, the "official controls" phrase in

SDCL 46A-10A-70 and -71 refers to the ordinances and regulations adopted by

entities (e.g., counties) authorized by statute to regulate drainage. Also, neither statute gives a landowner *the right* to drain into a public highway. The statutes speak to what *may* be done with respect to public highways *if the board* having supervision of the highway gives consent.

[¶32.] As it relates to the Township roads and rights-of-way at issue, this Court has previously explained that "the Legislature has required townships [to] 'act as trustees in guarding section line rights-of-way for free public access'" and "that Townships have 'a duty to maintain township roads' in order to prevent accidents and ensure the safety of travelers[.]" *Johnson v. Marion Twp.*, 2002 S.D. 35, ¶ 12, 642 N.W.2d 183, 185–86 (citation omitted); *see also* SDCL 31-13-1 ("[t]he board of township supervisors shall construct, repair, and maintain all of the township roads within the township"). Therefore, the circuit court properly determined that the Township can regulate the aspects of the McLaens' project that would impact Township roads and rights-of-way.

### 3. *Whether estoppel applies.*

[¶33.] The McLaens assert that there is no dispute that the Township has historically used an informal process for considering drainage projects that may impact Township roads and rights-of-way. They further claim that there is no dispute that Steven followed the Township's established practice and obtained approval from Seibel in 2015 to install culverts under Township roads and drain to the Township right-of-way. Steven further claims that he reasonably relied on Seibel's approval to his detriment because the McLaens would not have undertaken substantial work on the project had Seibel not approved it. The McLaens therefore

contend that the Township should be estopped from preventing them from completing their drainage project.

[¶34.] The circuit court did not expressly rule on the McLaens' estoppel claim. However, the circuit court granted the Township's motion for summary judgment and thereby effectively ruled against the McLaens on this contention. We review de novo whether summary judgment was proper in that regard. *See Smith Angus Ranch, Inc. v. Hurst*, 2021 S.D. 40, ¶ 13, 962 N.W.2d 626, 629.

[¶35.] "We have applied estoppel against public entities in exceptional circumstances to prevent manifest injustice." *Even v. City of Parker*, 1999 S.D. 72, ¶ 11, 597 N.W.2d 670, 674 (internal quotation marks omitted) (quoting *Smith v. Neville*, 539 N.W.2d 679, 682 (S.D. 1995)). "However, we do not favor estoppel against a public entity and will apply it only in extreme cases." *Id.* In cases involving municipalities, we have held that in order for estoppel to apply, "[m]ore than municipal acquiescence . . . should be required"; a municipal officer must "have taken some affirmative action influencing another which renders it inequitable for the municipality to assert a different set of facts." *Id.* ¶ 12, 597 N.W.2d at 674 (citation omitted). In addition, "[t]he conduct must have induced the other party to alter his position or do that which he would not otherwise have done to his prejudice." *Id.* (citation omitted).

[¶36.] The McLaens, as the party seeking to rely on estoppel, have "the burden of establishing the existence of the necessary exceptional circumstances." *See Rios v. S.D. Dep't of Soc. Servs.*, 420 N.W.2d 757, 760 (S.D. 1988). Here, the record does not evince exceptional circumstances or that the McLaens had an

objectively reasonable basis to believe that permission sufficient to undertake the drainage project had been given by the Township in 2015. The McLaens' 2014 permit from Marshall County was specifically conditioned on the McLaens obtaining *signed approval* from the Township, and it is undisputed that the McLaens did not obtain such approval from the Township prior to starting the drainage project.

[¶37.] Also, while the McLaens respond that the Township's March 2016 meeting minutes are sufficient to constitute signed approval, those minutes do not reflect that any official decision was made regarding the McLaens' drainage project. The March 2016 minutes, in handwritten form, provide:

> Road Maintenance
> Old issue
> - Steven McLaen called
>   - Culverts full of mud north of Rogers
>   - Wild Rice Board
> - There is tile across north of church – some culverts

Even if these notes are in fact referring to the McLaens' proposed drainage project, the minutes do not indicate that a motion to approve the project was made or approved or that any action was taken by the Township related to the McLaens' project. The absence of such a motion is noteworthy because these same minutes reflect official actions by the Township on other matters presented at this meeting. Because the undisputed facts do not support that the McLaens had a reasonable basis to believe they had signed approval from the Township, their estoppel claim is without merit.

### 4.     *Whether the circuit court erred in granting summary judgment upholding the Township's decision.*

[¶38.]     The McLaens contend that the court erred in granting summary judgment because, in their view, the court improperly engaged in fact finding. They point to questions the court asked counsel during the summary judgment hearing and to the court's characterization of documentary evidence in its memorandum decision.

[¶39.]     A review of the hearing transcript and the court's memorandum decision does not reflect that the circuit court *weighed* disputed evidence or engaged in fact finding. *See Hamilton v. Sommers*, 2014 S.D. 76, ¶ 42, 855 N.W.2d 855, 868 (explaining that on summary judgment, the court's role "is not to weigh the evidence and determine the matters' truth"). Rather, it appears the circuit court incorrectly identified the dates of certain events when it examined whether the McLaens timely commenced their appeal or whether estoppel applies. However, this Court is in the same position as the circuit court when reviewing documentary evidence to determine the relevant dates upon which events happened. We can also determine what occurred at meetings based on the record evidence and what was being conveyed in other documentary evidence (e.g., the Township's March 2016 and August 2019 meeting minutes and Attorney Leibel's January 2020 letter). As with any summary judgment ruling, we review de novo whether summary judgment was proper. *Harvey v. Reg'l Health Network, Inc.*, 2018 S.D. 3, ¶ 26, 906 N.W.2d 382, 390 (stating the standard of review on summary judgment).

[¶40.] Although de novo review applies to our review of the underlying record and the circuit court's summary judgment decision, this appeal further implicates a review of an administrative body's decision. In regard to the appropriate standard of review of the Township's decision, the McLaens contend that a de novo standard of review applies because without any underlying rules or standards governing the Township's decision-making process, the Township's decision was quasi-judicial and should not be afforded any deference on review. The Township counters that the abuse of discretion standard of review applies as explained in *South Dakota Department of Game, Fish and Parks v. Troy Township*, 2017 S.D. 50, 900 N.W.2d 840, and *Carmody v. Lake County Board of Commissioners*, 2020 S.D. 3, 938 N.W.2d 433, because the Township's decision to disallow the installation of new culverts under Township roads and disallow drainage into a Township right-of-way involves "exercising discretion over a matter of policy, rather than serving a role as an adjudicatory body."

[¶41.] Under SDCL 8-5-10, appeals from a decision of a township board of supervisors "shall be heard and determined *de novo*." (Emphasis added.) However, this Court clarified in *Troy Township* that the judiciary's authority to review an administrative body's decision de novo depends on whether the action was quasi-judicial or non-quasi-judicial. 2017 S.D. 50, ¶ 24, 900 N.W.2d at 850. This is because "[u]nder the separation-of-powers doctrine, a court may not 'exercise or participate in the exercise of functions which are essentially legislative or administrative.'" *Troy Twp.*, 2017 S.D. 50, ¶ 14, 900 N.W.2d at 846. However, "if the action appealed is quasi-judicial, then the separation-of-powers doctrine is not

offended by a de novo hearing on appeal[.]" *Id.* ¶ 20, 900 N.W.2d at 849. Quasi-judicial actions are "akin to 'the ordinary business of courts' or are actions that 'could have been determined as an original action in circuit court.'" *Carmody*, 2020 S.D. 3, ¶ 16, 938 N.W.2d at 438 (quoting *Troy Twp.*, 2017 S.D. 50, ¶ 21, 900 N.W.2d at 849).

[¶42.] The Township's decision in response to the McLaens' request to install culverts under Township roads and drain into a Township right-of-way was administrative in nature. The decision did not involve adjudicating existing rights between specific individuals, and the McLaens could not have asked the circuit court in the first instance to approve their request. Because the Township's decision was one of policy, the circuit court properly applied the abuse of discretion standard of review. *See Troy Twp.*, 2017 S.D. 50, ¶ 22, 900 N.W.2d at 849–50.

[¶43.] On appeal, this Court likewise reviews the Township's decision for an abuse of discretion. *See Surat v. Am. Twp. Bd. of Supervisors*, 2017 S.D. 69, ¶ 16, 904 N.W.2d 61, 67. Abuse of discretion review "is limited to determining whether the administrative board 'has acted unreasonably, arbitrarily, or has manifestly abused its discretion[.]'" *Troy Twp.*, 2017 S.D. 50, ¶ 17, 900 N.W.2d at 848 (quoting *Dunker v. Brown Cnty. Bd. of Ed.*, 80 S.D. 193, 203, 121 N.W.2d 10, 17 (1963)). This standard is narrow; thus, "a court is not to substitute its judgment for that of an agency." *Id.* ¶ 33, 900 N.W.2d at 852–53.

[¶44.] The McLaens assert that because the Township has in the past approved drainage projects informally and continues to do so since denying the McLaens' request, the Township's dissimilar treatment of them "is the epitome of

an arbitrary and capricious act." Even if this factual claim regarding the Township's informal practices is true, the Township's actions and decisions related to other alleged projects occurring before or after it denied the McLaens' request are immaterial to this Court's review, which is confined to the evidence before the Township at the time it made its decision in November 2019.

[¶45.]     The McLaens further assert that the Township's decision was arbitrary and capricious because the decision was not governed by any fixed rules or standards. This contention similarly fails. Although the Township has not adopted rules or enacted ordinances governing the process by which it grants or denies requests to install culverts in Township roads or drain water into a Township right-of-way, this alone does not automatically mean that the Township acted arbitrarily in denying the McLaens' request. As this Court has recognized, "[n]o standards for township road repair and maintenance exist in our laws"; therefore, "[d]etails for repairing and maintaining secondary roads . . . remain within the conscientious discretion of the board of supervisors." *Willoughby v. Grim*, 1998 S.D. 68, ¶ 10, 581 N.W.2d 165, 168–69.

[¶46.]     Nevertheless, the Township "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *See Troy Twp.*, 2017 S.D. 50, ¶ 33, 900 N.W.2d at 853 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 2866, 77 L. Ed. 2d 443 (1983)). On review, a decision is arbitrary "if the [township] has relied on factors which [the Legislature] has not intended it to consider, entirely failed to consider an important

aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the [township], or is so implausible that it could not be ascribed to a difference in view or the product of . . . expertise." *Id.* (citation omitted) (second alteration in original). Importantly, as the parties challenging the Township's decision, the McLaens have the burden of proving that an abuse of discretion occurred. *See Carmody*, 2020 S.D. 3, ¶ 29, 938 N.W.2d at 442.

[¶47.]     The McLaens contend that the Township acted arbitrarily because its "purported considerations and conditions that it attempted to impose on the McLaens' project lack factual and legal merit." They assert there is no factual merit because the supervisors' individual considerations in denying the McLaens' request were "not based on anything other than their unilateral opinions." They further contend the Township's denial lacks legal merit because the Township took into consideration matters that are not within its authority to control, e.g., how the drainage project will impact the capacity of Wild Rice Creek or how it will impact neighboring landowners' property.

[¶48.]     A review of the record, including the supervisors' deposition testimony and both the August 2019 meeting minutes and Attorney Leibel's January 2020 letter, reflects that the Township improperly considered the project's impact on Wild Rice Creek and how the project might impact neighboring landowners. These matters are not within the Township's authority to regulate. However, the Township did not deny the McLaens' request on these factors alone. Rather, the Township specifically considered how aspects of the McLaens' project would impact Township roads and rights-of-way. In this regard, the McLaens have not shown

that the Township's concerns were arbitrary or capricious or that the Township's decision runs counter to the evidence the Township had before it.

[¶49.] On appeal, the McLaens dispute the accuracy of the Township's concerns about the impact of their project by directing this Court to new evidence that was not before the Township at the time it made its decision. For example, they claim that the Township's concern that the ditch to 103rd Street would be manipulated was "inaccurate" and "is irrelevant now" because the McLaens never intended to dig the ditch deeper and in December 2020 someone else cleaned out the ditch in essentially the same manner that was proposed by the McLaens. Regardless of the veracity of this new information, it was not known to the Township at the time it made its decision. When the supervisors made their decision based on the information provided to them by the McLaens, they were under the impression that the ditch would be manipulated, and the McLaens do not point to evidence in the record existing at the time of this decision supporting their contention that the supervisors' concern was without an accurate basis. Further, the supervisors, as lifelong residents of White Township with personal knowledge of the condition of the roads and right-of-way at issue, are in a position to make the types of assessments made here related to the Township's roads and rights-of-way. *See Troy Twp.*, 2017 S.D. 50, ¶ 40, 900 N.W.2d at 855 (observing that the board members have first-hand knowledge of the highways). The reasons expressed by the supervisors to support their denial of the project were not implausible, nor were they refuted by uncontroverted evidence in the record. The fact that their views

differed from the McLaens' does not mean that their decision was arbitrary or capricious.

[¶50.] However, the McLeans also assert that the Township's decision was arbitrary and capricious because it was made without affording them adequate procedural due process. They contend that the Township failed to properly give notice under SDCL chapter 8-3 of the August 17, 2019 meeting and the additional meetings thereafter. Under SDCL 8-3-1, "[n]otice of the time and place of such township meeting shall be given by the publication thereof for *three consecutive days* in a daily, or for two consecutive weeks in a weekly newspaper of general circulation in the township beginning not less than twelve calendar days prior to such meeting." (Emphasis added.) This same notice requirement applies to special meetings. SDCL 8-3-4 (requiring that notice of a special meeting be in the same manner as required for notice of an annual township meeting). It is undisputed that notice was not given three days prior to any of the special meetings held related to the McLaens' project. Also, the McLaens did not have actual notice of any of these meetings. Bosse testified that the supervisors never told the McLaens about the meetings, including the August 17, 2019 meeting. Instead, Bosse explained that he posted notice of the meetings 24 hours prior by attaching a piece of paper to the outside of the door to his business, Bolt Marketing.

[¶51.] While we certainly do not condone this type of procedure for giving "notice", in *Troy Township*, this Court observed that alleged due process violations related to statutory procedural requirements requires proof of prejudice. 2017 S.D. 50, ¶ 46, 900 N.W.2d at 857. Here, the McLaens have not identified any prejudice

as a result of the Township's failure to comply with the notice statutes. While they did not have notice of the meetings, they were able to present information to the Township related to this project following the August 17 meeting. In particular, the McLaens, along with their attorney, and the Township supervisors attended the meeting of the County Drainage Board, and at this meeting, the McLaens' attorney presented a drawing showing a drop in elevation in the area to be drained. Also, the depositions of the Township supervisors indicate that there were several informal discussions between Steven and the individual supervisors after this meeting. The McLaens identify no record evidence illustrating what additional information they would have provided to the Township had they been given the opportunity to attend the meetings.

[¶52.] The McLaens essentially ask this Court to conduct a de novo review of the Township's decision. However, this Court is without authority to substitute our judgment for that of the Township when we review non-quasi-judicial actions. *See Troy Twp.*, 2017 S.D. 50, ¶ 33, 900 N.W.2d at 852–53. Because a review of the record reveals that the Township "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action[,]" the McLaens have not established that the Township acted arbitrarily in denying the aspects of their project that impacted the Township roads and right-of-way.[3] *See id.* (quoting *Motor Vehicle Mfrs.*, 463 U.S. at

---

3. In a separate issue on appeal, the McLaens contend that the circuit court erred in stating that the appropriate course of action for the McLaens would have been to *first* obtain permission from White Township and then seek a permit from the Marshall County Drainage Board. In their view, this statement has no support in statute, case law, or other authority and therefore "reversal is warranted." We need not review the propriety of the

(continued . . .)

43, 103 S. Ct. at 2866). The circuit court properly granted the Township summary judgment.

[¶53.]     Affirmed.

[¶54.]     JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.

---

(. . . continued)

circuit court's statement because the circuit court did not rule against the McLaens based on this statement and the statement has no bearing on the merits of the McLaens' appeal.

We similarly do not need to address the additional issue raised by the McLaens—that the circuit court erred when it suggested "that drainage studies performed by an engineering firm are necessary to overrule the Township's decision." This point was made by the circuit court in the context of considering whether the McLaens satisfied their burden to produce evidence showing that the Township's decision was contrary to evidence in the record. Even if an expert opinion was not essential to show that contrary evidence existed, the circuit court's underlying point was legitimate, and something more than a difference in opinion between the supervisors and the McLaens must be shown in order for the McLaens to establish that the Township acted arbitrarily.